## S08A0982. FLETCHER v. THE STATE.
### (670 SE2d 411)

SEARS, Chief Justice.

The appellant, Ronald Fletcher, appeals from his conviction for numerous crimes stemming from the death of 90-year-old Emma Hickman.[1] On appeal, Fletcher contends, among other things, that the trial court erred in admitting hearsay testimony and in denying his motion to suppress evidence that was discovered in a room he rented from the victim. Because we find no merit to Fletcher's contentions, we affirm his convictions.

1. The evidence of record shows that, at the time of the crimes, Fletcher had been living in the basement of Hickman's house for two or three months. On February 1, 2001, several neighbors and close friends of Hickman's thought it unusual that they had not seen Hickman that day, that she had not gotten her mail, and that she did not answer her phone calls. As a result, Mabel Rivers, a close friend of the victim since 1966, Samuel Rivers, Mabel's son, and the victim's niece, Mattie Evans, went to Hickman's home to check on her. They pulled into the driveway and blew the car horn. Fletcher

---

[1] The crimes occurred on February 1, 2001, and on July 19, 2002, Fletcher was indicted for malice murder, felony murder, two counts of aggravated assault, false imprisonment, and aggravated battery. On August 23, 2002, a jury found Fletcher guilty on all counts. The felony murder conviction was vacated as a matter of law, and the trial court merged the two counts of aggravated assault with the malice murder conviction. On August 26, 2002, the trial court sentenced Fletcher to life in prison for the malice murder conviction, to ten concurrent years in prison for the false imprisonment conviction, and to twenty concurrent years in prison for the aggravated battery conviction. On September 18, 2002, Fletcher filed a motion for new trial, and on April 27, 2005, he filed an amended motion for new trial. The trial court denied the motion for new trial, as amended on April 24, 2007. Fletcher then filed a timely notice of appeal, and the appeal was docketed in this Court on February 25, 2008. The case was thereafter submitted for decision on the briefs.

came outside, and they asked him to let them inside the house. Fletcher refused to let them in, telling them Hickman told him to tell them she had a cold, did not want to be bothered, and wanted them to leave. Fletcher then went onto a porch at the house, acted like he was talking to Hickman, and told Samuel Rivers and Mattie Evans, who had followed him, that Hickman had said she did not feel well and for them to go home. Rivers and Evans, however, testified that they did not hear Hickman say anything. Fletcher also told Evans and the Riverses he had locked his key in the house, and he had to go to a nearby train station to meet his girlfriend to get another key. After Fletcher left, Samuel Rivers went to a neighbor's house and called the police. Meanwhile, Mattie Evans and Mabel Rivers drove to the train station, which was about five blocks from the victim's house, to see if Fletcher was there. He was not. Fletcher, in fact, never returned to the house and was arrested in an abandoned house on February 6, 2001.

When the police entered Hickman's house, they found her on the floor in a bedroom. She was gagged with nylon stockings and surrounded by a pool of blood near her head. A nylon phone cord was wrapped around her neck, and a claw hammer that was covered with blood and brain matter was found on the floor near her. Hickman was transported to a hospital, where she died from her injuries several days later. During a search of Fletcher's basement apartment, police found clothes with Hickman's blood on them.

Having reviewed the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Fletcher guilty beyond a reasonable doubt of the crimes for which he was convicted.[2]

2. Fletcher contends his right of confrontation was violated when a witness, Homer Ragland, testified that he was visiting with Hickman when Fletcher asked them both for money, and Hickman said she was tired of giving him money. However, because the statements were not testimonial in nature, there was no violation of Fletcher's right of confrontation.[3] Fletcher also contends that Ragland's testimony that the victim told him that she was tired of giving Fletcher money was inadmissible hearsay. We conclude, however, that, even if the trial court erred in admitting the statement in question, the error was harmless given the strength of the evidence against Fletcher.[4]

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] See *Demons v. State*, 277 Ga. 724, 727-728 (595 SE2d 76) (2004) (comments during "a conversation with a friend, before the commission of any crime, and without any reasonable expectation that they would be used at a later trial" are non-testimonial).

[4] *Parks v. State*, 275 Ga. 320, 322 (565 SE2d 447) (2002).

3. Fletcher contends the trial court erred in denying his motion to suppress evidence found in the basement apartment he rented from the victim.[5] In particular, Fletcher contends that, because the warrant did not specifically grant permission to search his basement apartment at the victim's residence, but instead simply stated that the place to be searched was "the residence at 1338 Georgia Avenue, East Point, Fulton County, Georgia," the warrant was not particular enough to permit a search of his separate apartment. We disagree.

The Fourth Amendment to the United States Constitution requires that a warrant "particularly describ[e] the place to be searched." Under this requirement, the general rule is that "[a] search warrant for an apartment house or hotel or other multiple-occupancy building will usually be held invalid if it fails to describe the particular subunit to be searched with sufficient definiteness to preclude a search of one or more subunits indiscriminately."[6] There are, however, exceptions to this general rule. "The warrant of a multi-unit structure will be valid where (1) there is probable cause to search each unit; (2) the targets of the investigation have access to the entire structure; or (3) the officers reasonably believed that the premises had only a single unit."[7]

In the present case, the second and third exceptions are inapplicable, as it is unclear whether Fletcher routinely had access to the entire residence and as the officers knew at the time of the application for the warrant that the residence contained a separate basement apartment. We conclude, however, that the first exception is applicable.

In determining if probable cause exists to issue a search warrant, a magistrate must evaluate all the circumstances set forth in the affidavit before him or her and " 'make a practical, common-sense decision whether . . . there is a fair probability that . . . evidence of a crime will be found in a particular place.' "[8] "On review, this Court is limited to 'determin[ing] if the magistrate had a "substantial basis" for concluding that probable cause existed to issue the search

---

[5] The basement apartment had a downstairs entrance through the garage and a door that separated the apartment from the rest of the downstairs area. The upstairs hallway also had a door that led to the basement area. The basement apartment did not have a separate address.

[6] 2 LaFave, Search & Seizure, § 4.5 (b) at p. 579 (4th ed. 2004). See *Bing v. State*, 178 Ga. App. 288, 289 (342 SE2d 762) (1986); *United States v. Perez*, 484 F3d 735, 741 (5th Cir. 2007); *United States v. Johnson*, 26 F3d 669, 694 (7th Cir. 1994).

[7] *Perez*, 484 F3d at 741. Accord, 2 LaFave at 579-586; *Bing*, 178 Ga. App. at 289-290; *Johnson*, 26 F3d at 694.

[8] *DeYoung v. State*, 268 Ga. 780, 787 (493 SE2d 157) (1997) (quoting *State v. Stephens*, 252 Ga. 181, 182 (311 SE2d 823) (1984)).

warrant(,)' and must afford substantial deference to the magistrate's decision."[9]

The affidavit given in support of the search warrant informed the magistrate that the residence at 1338 Georgia Avenue had a basement apartment, and that the affiant, a police officer, had been to the residence in response to a "person injured call" and found Emma Hickman severely injured with head trauma.[10] The affidavit also stated that family members of the victim were at the residence and told police officers they came to the residence to check on the welfare of the victim, saw a man who was the tenant in a basement apartment at the residence, and asked the man for help to gain entry into the house. According to the affidavit, the man rebuffed the request of the family members and left the scene.

We conclude the affidavit provided the magistrate with enough information to come to the "practical, common-sense" conclusion that the victim lived in the residence at 1338 Georgia Avenue, that a tenant lived in the basement apartment located in the residence, that the tenant had severely beaten the victim, and that there was a fair probability that evidence of the crime could be found either in the tenant's apartment or in the victim's part of the residence. Because the application for the search warrant established probable cause to search Fletcher's basement apartment and the victim's part of the residence, we conclude the trial court properly denied Fletcher's motion to suppress the evidence found in his apartment.

4. Fletcher contends the State improperly commented on his right to remain silent when a police detective testified Fletcher had refused to talk with the officer after his arrest. We conclude, however, that any error was harmless. First, the prosecutor "made no effort to draw the jury's attention to the officer's comment or to convince the jury to infer guilt from [Fletcher's] post-arrest conduct."[11] Second, the trial court immediately gave a curative instruction setting forth the correct principles of law.[12] And, finally, the evidence of Fletcher's guilt is overwhelming.[13] Analyzing the officer's

---

[9] *Fair v. State*, 284 Ga. 165, 171 (664 SE2d 227) (2008).

[10] At the hearing on the motion to suppress, the affiant testified that he provided greater detail than that provided in the affidavit to the magistrate, but the record does not reveal whether he did so under oath. See 1983 Ga. Const., Art. I, Sec. I, Par. XIII ("no warrant shall issue except upon probable cause supported by oath or affirmation particularly describing the place or places to be searched and the persons or things to be seized"); *Tabb v. State*, 250 Ga. 317, 321 (297 SE2d 227) (1982) ("a magistrate may consider sworn oral testimony in addition to the contents of an affidavit when deciding whether there is probable cause to issue a search warrant").

[11] *Brewer v. Hall*, 278 Ga. 511, 514 (603 SE2d 244) (2004).

[12] *Al-Amin v. State*, 278 Ga. 74, 85-86 (597 SE2d 332) (2004).

[13] *Al-Amin*, 278 Ga. at 85-86; *Brewer*, 278 Ga. at 514.

comment in light of these facts, we conclude that any error in the officer's testimony was harmless.[14]

5. Fletcher contends that a State's witness improperly placed his character into evidence by testifying she had told the victim Fletcher was using drugs. However, because Fletcher did not make this specific objection at trial, he is procedurally barred from raising it on appeal.[15] Moreover, to the extent Fletcher contends the witness's statement to the victim was inadmissible hearsay, the contention is without merit, as " 'a witness's testimony as to what he (the witness) said is not hearsay.' "[16]

6. Fletcher contends that the trial court erred in not permitting him to ask certain questions during voir dire. However, because these questions dealt with the "burden of proof, reasonable doubt and the presumption of innocence ... which are properly the subjects of instruction by the court at the end of trial,"[17] or because they asked the prospective jurors to prejudge the case,[18] the trial court did not abuse its discretion in prohibiting the questions.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 17, 2008.

*Zell & Zell, Rodney S. Zell*, for appellant.

*Paul L. Howard, Jr., District Attorney, Christopher M. Quinn, Bettieanne C. Hart, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Benjamin H. Pierman, Assistant Attorney General*, for appellee.

---

[14] Id.

[15] *Walker v. State*, 282 Ga. 703, 706 (653 SE2d 468) (2007).

[16] *Culmer v. State*, 282 Ga. 330, 334 (647 SE2d 30) (2007) (quoting *Webb v. State*, 154 Ga. App. 395, 397 (2) (268 SE2d 438) (1980)).

[17] *Chastain v. State*, 255 Ga. 723, 724 (342 SE2d 678) (1986); *Sallie v. State*, 276 Ga. 506, 509-510 (578 SE2d 444) (2003); *Ledbetter v. State*, 262 Ga. 370, 372 (418 SE2d 57) (1992).

[18] *Baxter v. State*, 254 Ga. 538, 543 (331 SE2d 561) (1985).