## S09A0365. CARSON v. THE STATE.
### (676 SE2d 207)

SEARS, Chief Justice.

The appellant, Joseph Carson, appeals from his conviction for murder and other crimes stemming from the stabbing death of Leo Ford.[1] On appeal, Carson contends, among other things, the trial court erred in failing to give a limiting instruction regarding an officer's testimony and erred in admitting evidence of a prior difficulty between Carson and the victim. Finding no merit to Carson's contentions, we affirm his convictions.

---

[1] The crimes occurred on January 19, 2005. On April 19, 2005, Carson was indicted for malice murder, felony murder, aggravated assault, concealing the death of another, and the possession of a knife during the commission of a felony. On September 19, 2006, a jury found Carson guilty on all counts, and on that same day, the court sentenced Carson to life in prison for malice murder, to a ten-year concurrent sentence for concealing the death, and to a five-year consecutive sentence for the possession offense. The court merged the aggravated assault conviction with the malice murder conviction, and the felony murder conviction was vacated as a matter of law. On September 19, 2006, Carson filed a motion for new trial, and on May 22, 2008, he filed an amended motion for new trial. On May 28, 2008, the trial court denied the motion for new trial, as amended. On June 27, 2008, Carson filed a notice of appeal, and on November 19, 2008, the appeal was docketed in this Court. The appeal was subsequently submitted for decision on the briefs.

338

1. On January 19, 2005, Paul Henry was drinking beer and smoking crack cocaine with Carson and Ford. Ford and Carson were roommates. Henry had been friends with Ford for about ten years and had worked with Carson for about four years before the crimes. When the supply of cocaine was exhausted, Henry and Ford discussed leaving the house to buy more alcohol and cocaine. Ford asked Henry if he would give Ford some cash in exchange for some of his food stamps so that he could buy some more drugs. Ford also asked Henry not to tell Carson that he had food stamps, because Ford owed Carson some money. Henry, however, did inform Carson about the food stamps. The two men then left the house, and Ford bought some drugs. After the drug purchase, Ford and Henry went their separate ways, and Henry stated that he thought Ford went home.

The next day, January 20, 2005, police officers found Ford's body in a sinkhole at a school located a block away from the house in which Carson and Ford lived. Ford's legs were partially in a large plastic garbage bag, and there was another large plastic garbage bag under his back. His clothes were soaked in blood, and a knife was sticking out of his chest. The medical examiner testified that Ford had been stabbed six times and died from a deep stab wound that penetrated his lungs and severed his pulmonary artery, resulting in massive blood loss. A yellow Dollar General bag was found next to the body. After the police identified the body and located Ford's address, a detective went to the address, where he encountered Carson. Carson told the detective that he had not seen Ford since the night before. The detective added that there were several large stains in the room that looked like blood stains. The detective asked Carson if he could check to see if anyone else was in the house, and Carson consented. When the detective and Carson were walking down the hallway at the house, the detective asked Carson what was behind a closed door, and Carson responded that that "*was* [Ford's] room." The detective had not told Carson that Ford was dead.

According to the detective, Carson volunteered to go to the police station to answer questions. Sergeant Gray of the East Point Police Department conducted the interview, which was videotaped. Gray testified the sound quality of the videotape of the interview was poor, but he could understand what Carson said. The videotape was played for the jury, but Gray also testified about it. Sergeant Gray testified that Carson at first stated he "came home from work, drank a few beers, went to sleep, woke up," but that he later stated that, when he came home, Ford and Henry were there, they drank some beers, and then he went to bed. At one point, Carson stated that he, Ford, and Henry all contributed money to buy some drugs and that the last time he saw Ford was when Ford and Henry left to purchase drugs. He later admitted, however, that Ford did return to the house but

that Ford had already consumed the drugs. Carson said he was unhappy with Ford for failing to return with some cocaine. Sergeant Gray further testified that Carson told him he knew Ford had been stabbed, but Gray added that he (Gray) and the other officers had told no one about the cause of death. According to Gray, Carson did not confess to killing Ford and said numerous times he never harmed Ford.

Large stains on the carpet and a chair at Carson's home were tested for blood, and a forensic biologist testified that the stains were Ford's blood. A Family Dollar bag like that found next to Ford's body was also found at Carson's home. A trail of blood was found in the hallway of Carson's home, as well as by his back door.

Having reviewed the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Carson guilty beyond a reasonable doubt of the crimes for which he was convicted.[2]

2. Carson contends the trial court erred by failing to give a limiting instruction regarding an alleged discrepancy between Sergeant Gray's testimony about Carson's confession and the contents of the recording. Carson alleges Gray testified that Carson confessed to stabbing Ford, that he bolstered his testimony by saying the videotape would confirm the confession, and that the tape, however, failed to corroborate Gray's testimony. Carson contends Gray's statement was highly prejudicial, and the trial court should have given an instruction on how to consider the discrepancy between Gray's testimony and the videotape. Carson, however, neither objected to Gray's testimony nor requested a limiting instruction. He is therefore procedurally barred from raising this issue on appeal.[3]

3. Carson contends the trial court erred by failing to hold a *Jackson-Denno* hearing to determine the voluntariness of the statement Carson made to the police. The record, however, shows that the

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Fletcher v. State*, 284 Ga. 653, 657 (670 SE2d 411) (2008). The record demonstrates Sergeant Gray had a slip of the tongue when he stated that Carson said he stabbed Ford. During his cross-examination of Gray, defense counsel attempted to pinpoint the time on the tape at which Carson said he knew Ford had been stabbed. After numerous times of playing partial portions of the videotape, Sergeant Gray stated he thought he had heard the comment. Gray stated, "I think that's it, when he said he came over and he stabbed him." Defense counsel did not object to Gray's testimony, but, instead, stated, "you are saying right there he knew Leo Ford was stabbed." Gray answered affirmatively, and defense counsel continued to cross-examine Gray about when Carson admitted that he knew Ford was stabbed. In this regard, on numerous occasions during his testimony, Sergeant Gray stated that Carson said he never harmed Ford and that Carson did not confess to killing Ford. In context, then, it is clear Gray misspoke when he said Carson stabbed Ford, and was meaning to identify the point on the tape when Carson said he knew Ford had been stabbed.

trial court did conduct a *Jackson-Denno* hearing. The contention, therefore, is without merit.

4. Carson contends the trial court erred in admitting testimony from Sergeant Sylvia Smith about a prior difficulty that occurred between Carson and Ford in 2003 during which Carson stabbed Ford in a dispute over money. Carson contends Sergeant Smith's testimony constituted inadmissible hearsay and violated his right of confrontation. Although Carson contended at trial that testimony about the 2003 incident would improperly place his character into evidence, he did not raise any hearsay or confrontation objections at trial. Because he did not do so, he is barred from raising the issues on appeal.[4]

5. Carson contends the trial court erred in admitting testimony from Shirley Campbell that, in August 1987, when she was breaking up with Carson, he cut her and caused 25 stitches. We conclude, however, that, even if this evidence improperly placed Carson's character into evidence, the error was harmless given the strength of the evidence against Carson.[5]

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 28, 2009.

*Roderick K. Bridges*, for appellant.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Bettieanne C. Hart, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Benjamin H. Pierman, Assistant Attorney General*, for appellee.

---

[4] Id.

[5] *Patterson v. State*, 280 Ga. 132, 135 (625 SE2d 395) (2006); *White v. State*, 269 Ga. 74, 75 (495 SE2d 278) (1998).