A10A1965. LEE v. THE STATE.
(708 SE2d 633)

PHIPPS, Presiding Judge.

After a jury trial, Victor Lee was convicted of aggravated assault,[1] armed robbery,[2] and concealing the death of another person,[3] in connection with the shooting death of Gerald Stinson. The trial court denied Lee's motion for new trial. Lee appeals, arguing that the court erred in certain evidentiary rulings and in denying him the opportunity to present evidence in support of claims of ineffective assistance of counsel raised in an amendment to the motion for new trial. We find no reversible error in the court's evidentiary rulings, and we affirm the judgment of conviction. We

---

[14] See *In the Interest of A. M.*, 259 Ga. App. at 543.
[1] OCGA § 16-5-21 (a) (2).
[2] OCGA § 16-8-41 (a).
[3] OCGA § 16-10-31.

find, however, that the court erred in denying Lee the opportunity to present evidence on the ineffective assistance of counsel claims; thus, as to the order denying Lee's motion for new trial, we vacate that part of the order which addresses the ineffective assistance of counsel claims raised in the amendment to the new trial motion; and we remand this case for further proceedings not inconsistent herewith.

The shooting occurred on July 16, 2005. State's witness Jonas Blue (having pleaded guilty to various charges arising from the shooting) testified at trial as follows. At the time of the shooting, he lived in a house with Lee, Lee's mother, and other members of Lee's family. A few days before the shooting, Blue arranged for Stinson to purchase computer parts from Lee. Lee and Blue discussed the anticipated sale, and Lee told Blue that he wanted to rob Stinson. Blue called Stinson on July 16 to schedule a meeting at Lee's house later that day. Lee then told Blue that he also planned to kill Stinson.

Blue testified that when Stinson arrived at the house, the three went upstairs to Lee's bedroom. While Stinson was examining the computer parts, Lee tried to shoot him, but his gun jammed. Lee handed the gun to Blue. Stinson "rushed" toward Blue, who twice hit him in the head with the gun. Stinson stumbled backward and then ran down the stairs. Lee grabbed the gun from Blue and pursued Stinson. Lee shot Stinson in the back of the head.

Blue further testified that he and Lee cleaned the scene. The two placed Stinson's body in a blanket in the back of Stinson's truck. Blue then left the house. Shortly thereafter, Lee called Blue using a cell phone that he had taken from Stinson, and he asked what he should do with Stinson's truck; Blue responded: "[J]ust get rid of it." Later that day, Blue saw Lee with a gun that had belonged to Stinson. The day after the shooting, Blue and Lee left town; while out of town, Blue also used Stinson's cell phone.

A friend of Stinson's testified that he had planned to meet Stinson the evening of July 16, 2005. When Stinson failed to appear, the friend tried to call him but got no response. Another witness, Stinson's roommate, testified that he last saw Stinson around 5:00 p.m. on July 16. The roommate also testified that Stinson owned a Glock firearm that he usually carried with him; the gun was missing from their apartment the following day.

On July 17, 2005, law enforcement officers discovered Stinson's body in his abandoned truck, which was parked on the main road leading into the subdivision where Lee lived. An inquiry into Stinson's cell phone records caused police to focus their investigation on Lee. While Lee was out of town, officers searched his house pursuant to a warrant. In Lee's bedroom, under his mattress, they discovered the keys to Stinson's truck and a "survival knife" that

Stinson's business partner later identified as very similar to one he had seen in Stinson's possession. While at Lee's house, the officers also obtained from Lee's mother three firearm magazines that Stinson's business partner later identified as belonging to Stinson.

Approximately one year later, after obtaining a statement from Blue that the shooting occurred at Lee's house, police searched the house again. They found no forensic evidence connecting Lee with the crime or showing that his house was the crime scene, and no weapon connecting Lee with the shooting.

1. The state moved in limine to exclude, as irrelevant, evidence of Lee's age.[4] Lee responded that the evidence was relevant to whether Blue was a "master mind or a leader to someone of such young age." The court stated, "What I've heard is there may be some relevance as to the respective age between the two co-defendants," and held that Lee could present evidence, if such existed, that Blue was older than Lee.[5] The court, however, excluded evidence "as to the specifics of [Lee's] age and the specifics with regard to the age of [Blue]," for the reason that: "[W]e heard from one potential juror yesterday that she was feeling very sympathetic in relationship to the apparent youth of [Lee] and sympathy has no bearing in this trial from a legal perspective."

Assuming, arguendo, that the evidence of specific ages was relevant to the case, any error in the exclusion of the evidence does not require reversal. Although Lee was limited from introducing evidence of the specific ages of himself and Blue, the court held that it would allow other evidence of an age difference between them.[6] Lee, however, did not present any such evidence. Moreover, the record does not reveal the age difference between the two — be it a few months or several decades. Accordingly, this court has no basis upon which to assess whether Lee was harmed by the exclusion of the evidence of their specific ages.[7] Under these circumstances, Lee has not shown that there was any reasonable probability that the exclusion of the evidence contributed to the verdict.[8]

2. Lee argues that the court erred by allowing into evidence an

---

[4] The record shows that, outside the jury's presence during the trial, the trial court asked Lee his age, and Lee stated that he was 19 years old. This occurred in November 2008, more than three years after the July 2005 shooting.

[5] In his appellate brief, Lee provides no record citation for Blue's age, and we have found no reference in the record to how old Blue was at the time of the shooting.

[6] See *Manley v. State*, 287 Ga. 338, 343 (2) (698 SE2d 301) (2010) (court's error in summarily excluding evidence of a witness's parole status was harmless where defendants were allowed to explore the possibility of the witness's bias in other ways).

[7] See *Williams v. State*, 279 Ga. App. 388, 389 (631 SE2d 417) (2006) (it is the defendant's duty on appeal to show error and harm by the record).

[8] See *Manley*, supra.

improper reference to his character, without his first having placed his character in issue. Over Lee's objection, the court permitted a witness to testify that she saw Lee with a medium-sized pistol on July 15, 2005. On cross-examination, Lee attempted to impeach this witness with her prior inconsistent statement that she had *not* seen Lee with a gun. The court then allowed the witness to testify, over Lee's objection, that she had seen the gun when Lee pulled it out while in a group of people at a shopping mall. Although the prosecutor argued to the court that "a medium[-]sized handgun . . . is the exact size gun that . . . Blue says that [Lee] killed [Stinson] with, and the projectile that was found in [Stinson] is a medium caliber bullet," no forensic evidence was presented that the gun seen by the witness was the gun with which Stinson was shot.

In general, evidence of a criminal defendant's bad character is not admissible unless the defendant first puts his character in issue.[9] The state contends that the witness's testimony was not evidence of Lee's bad character, on the ground that gun ownership and the custom of carrying a gun do not, *by themselves*, impute bad character.[10] The jury, however, was presented with more than simply evidence that Lee owned or carried a gun; the witness testified that Lee — whose youth the jury could observe[11] — had pulled out the gun while in a group of people at a shopping mall. This testimony imputed bad character to Lee.[12]

Although we give great deference to a trial court's factual finding that a defendant placed his own character into evidence, so as to allow the introduction of evidence of bad character,[13] the record does not show that the court in this case made such a finding, nor does it contain evidence to support such a finding. Rather, the court admitted the bad character evidence after defense counsel had inquired into how police had procured the witness's statement. But that inquiry had no bearing on *Lee's* character; thus, the court abused its discretion in ruling that, through such questioning, defense counsel had opened the door to the bad character evidence.[14] Under these circumstances, the trial court erred in allowing testi-

---

[9] *Donaldson v. State*, 279 Ga. App. 407 (1) (631 SE2d 443) (2006); see OCGA § 24-2-2.

[10] See *Sweet v. State*, 278 Ga. 320, 325 (7) (602 SE2d 603) (2004).

[11] See generally OCGA § 16-11-132 (b) (persons under the age of 18 are not lawfully allowed to possess or have control of a handgun except in limited circumstances).

[12] See *Moon v. State*, 202 Ga. App. 500, 501 (2) (414 SE2d 721) (1992) (witness's testimony that defendant not only had a reputation for carrying a gun but also for shooting the gun placed the defendant's general character in issue).

[13] See *Donaldson*, supra at 407-408 (1).

[14] Compare id. at 409 (where the only conceivable purpose of defense counsel's questions was to elicit testimony concerning defendant's character, trial court did not err in holding state could introduce rebuttal evidence on the same subject).

mony that Lee had been seen pulling out a gun at a shopping mall.[15]

This error, however, is harmless. There was overwhelming evidence of Lee's guilt — namely Blue's testimony implicating Lee in the crimes; evidence that, shortly after the shooting, items belonging to Stinson were seen in Lee's possession or found in his house (including some of Stinson's belongings found under Lee's mattress); and evidence that Lee used Stinson's cell phone on the evening of the shooting. In light of this evidence, Lee has not shown that there was any reasonable probability that the admission of the bad character testimony contributed to the verdict.[16]

3. Lee argues that the trial court erred in denying him the opportunity to present evidence in support of claims of ineffective assistance of counsel that he raised in an amendment to his motion for new trial. Instead, the trial court dismissed the claims raised in the amendment as exceeding the scope of an earlier restriction that the court had placed upon Lee regarding amending his motion for new trial. The record shows, however, that at the time the court issued the limitation on amending the motion for new trial, Lee was represented by counsel who later determined that he had a conflict of interest. Although the state argued that Lee's prior counsel did not in fact have a conflict of interest, the trial court was authorized to accept counsel's representation as to the conflict,[17] and the court in fact accepted that representation.

When conflict-free counsel appeared in the case and informed the court that Lee might want to raise additional issues in the motion for new trial, the court stated that it would continue the case, gave Lee ten days in which to make supplemental filings, and indicated that at a future hearing it would allow Lee's new counsel to present additional evidence. Lee filed an amendment to his motion for new trial within the time period set by the court, raising additional claims of ineffective assistance of counsel. At a subsequent hearing on the motion, however, the trial court indicated that it would not consider the additional claims.

A criminal defendant has a constitutional right to representation by conflict-free counsel through which to raise claims of ineffective assistance of trial counsel in a motion for new trial.[18]

---

[15] See *Moon*, supra at 501-502.

[16] See *Sharpe v. State*, 288 Ga. 565, 567 (4) (707 SE2d 338) (2011) (erroneous admission of bad character evidence was harmless in light of overwhelming evidence of defendant's guilt); *Carson v. State*, 285 Ga. 337, 340 (5) (676 SE2d 207) (2009) (evidence implicating defendant's character was harmless given strength of evidence against him).

[17] See *Holloway v. Arkansas*, 435 U. S. 475, 485-487 (II) (98 SC 1173, 55 LE2d 426) (1978); *Wilson v. State*, 257 Ga. 352, 353 (359 SE2d 661) (1987).

[18] See *Garland v. State*, 283 Ga. 201, 205 (657 SE2d 842) (2008).

Moreover, a party may amend a motion for new trial at any time before the ruling thereon.[19] Lee first raised his ineffective assistance claims through conflict-free counsel when he filed the amendment to his motion for new trial in November 2009. He was entitled to a hearing on the merits of those claims.[20] The trial court, however, expressly stated at the outset of the motion for new trial hearing that it would not consider the claims raised in the amendment. Under these circumstances, the court's failure to consider the claims was error.[21] Accordingly, we vacate that part of the order denying the motion for new trial that concerns the claims raised in Lee's amendment to the motion, and we remand the case for an evidentiary hearing on those claims, or for other proceedings not inconsistent with this opinion.[22]

*Judgment affirmed in part and vacated in part, and case remanded. Miller, P. J., and McFadden, J., concur.*

DECIDED MARCH 24, 2011.

*Jimmonique R. S. Rodgers*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Leonora Grant, Assistant District Attorney*, for appellee.

---

[19] OCGA § 5-5-40 (b); *Swint v. State*, 279 Ga. App. 777, 778 (1) (632 SE2d 712) (2006).

[20] *Shockley v. State*, 230 Ga. 869 (199 SE2d 791) (1973); *Cooper v. State*, 249 Ga. App. 881-882 (549 SE2d 829) (2001).

[21] See OCGA § 5-5-40 (b); *Cooper*, supra at 882; *Swint*, supra.

[22] See *Cooper*, supra.

