## A11A1731. PATE v. THE STATE.
(726 SE2d 691)

DOYLE, Presiding Judge.

After a jury trial, the Gwinnett County Superior Court convicted Brandon Pate of statutory rape,[1] aggravated assault with a deadly weapon,[2] and possession of a knife during the commission of the felony of statutory rape.[3] Pate appeals, arguing that the trial court erred by (1) admitting hearsay testimony; (2) replacing a juror without cause; (3) admitting bad character evidence; (4) violating his Sixth Amendment right to confront the victim about her accusations; (5) closing the courtroom during testimony by two State witnesses; and (6) admitting prejudicial testimony concerning harassment of the victim, which was unrelated to the charged crimes. For the reasons that follow, we affirm.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the [Defendant] no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[4] Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact

---

[1] OCGA § 16-6-3 (a).

[2] OCGA § 16-5-21 (a) (2).

[3] OCGA § 16-11-106 (b) (1).

[4] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

necessary to make out the State's case, the jury's verdict will be upheld.[5]

So viewed, the record establishes that in December 2008, the victim, M. R., reported that two years earlier in late December 2006 or early January 2007, Pate entered her bedroom, demanded sexual intercourse, produced a knife, and threatened to injure M. R.'s father if she refused his demand. M. R.'s friend, Kaila, was a guest at M. R.'s home that night, and she corroborated M. R.'s testimony that Pate possessed a knife and demanded sex. Kaila also testified that she witnessed M. R. and Pate have sexual intercourse that night.

In addition to M. R. and Kaila, the State presented the testimony of Dylan Toves, who testified that M. R. disclosed the sexual assault to him in the fall of 2007, prior to her December 2008 outcry, and Officer T. D. Roach, who initially investigated the outcry M. R. made in December 2008.

The State presented the similar transaction testimony of M. K., who testified that she was dating Pate in 2007, and on April 26 of that year, he came to her house, where she was alone. M. K. testified that Pate began getting rough and forced her to have sex. Although he did not have a weapon, he threatened to kill her father if she told anyone. M. K. did not report the incident to law enforcement, but she later told a friend and then her parents. M. K. testified that she did not know the victim or Kaila prior to her appearance in court that day.

The jury convicted Pate of statutory rape and the related aggravated assault and possession of a knife during the commission of the felony, but acquitted him of rape, two counts of child molestation, two counts of burglary, one count of aggravated assault with the intent to rape, terroristic threats, and two counts of cruelty to children in the third degree. Pate filed a motion for new trial, which he later moved to dismiss. The trial court granted the motion to dismiss, and Pate filed this appeal of his conviction.[6]

1. Pate first argues that the trial court erred by allowing prior consistent statements made by M. R. to Toves and Officer Roach, which statements amounted to inadmissible hearsay that improperly bolstered M. R.'s testimony.

---

[5] (Punctuation omitted.) *McKay v. State*, 234 Ga. App. 556, 556-557 (1) (507 SE2d 484) (1998). See also *Jackson*, 443 U. S. at 319 (III) (B).

[6] See *Heard v. State*, 274 Ga. 196, 197 (1) (552 SE2d 818) (2001) (an order granting a defendant's motion for new trial extends the time for filing a notice of appeal beyond the 30 days following entry of the judgment).

A witness's prior consistent statement is admissible only where: (1) the veracity of a witness's trial testimony has been placed in issue at trial; (2) the witness is present at trial; and (3) the witness is available for cross-examination. A witness's veracity is placed in issue so as to permit the introduction of a prior consistent statement if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination. Even then, to be admissible to refute the allegation of recent fabrication, improper influence, or improper motive, the prior statement must predate the alleged fabrication, influence, or motive.[7]

(a) With regard to Toves's testimony, Pate contends that the trial court erred by allowing him to testify that M. R. made allegations of sexual assault by Pate to Toves in the fall of 2007 because Toves testified before M. R. took the stand, and therefore, M. R.'s veracity had not been challenged at the time Toves testified. Nevertheless, as the Supreme Court has explained,

[a]lthough [M. R.] had not yet testified nor had there been an attack on her credibility when [Toves testified], [M. R.] subsequently did testify to statements with which [Toves's testimony was] consistent. . . . [Because M. R.'s] credibility was eventually attacked[,] [Toves's testimony] was properly admitted as a prior consistent statement.[8]

(b) On the other hand, M. R. made her statements to Officer Roach after the alleged fabrication, influence, or motive because they were made after M. R. was accused of possessing narcotics. Therefore, the statements were erroneously admitted, even though M. R.'s veracity was later attacked by Pate when she took the stand.[9] Nevertheless, any error in admitting this evidence was harmless.

Generally, hearsay erroneously admitted is harmless error where other legally admissible evidence of the same fact is

---

[7] (Punctuation and footnotes omitted.) *Duggan v. State*, 285 Ga. 363, 366 (2) (677 SE2d 92) (2009).

[8] *Sterling v. State*, 267 Ga. 209, 213 (9) (477 SE2d 807) (1996). See *Nguyen v. State*, 294 Ga. App. 67, 70-71 (668 SE2d 514) (2008).

[9] See *Duggan*, 285 Ga. at 366 (2).

introduced at trial. But when the hearsay erroneously admitted is the prior consistent statement of a testifying witness . . . the error is reversible if it appears likely that the hearsay contributed to the guilty verdict.[10]

Significantly, the jury acquitted Pate of the most serious sexual offenses as well as the related charges of aggravated assault, burglary, terroristic threats, and cruelty to children. These acquittals establish "that the jury was able to objectively consider the evidence of the charges, despite the improper bolstering . . . ."[11] Accordingly, this enumeration is without merit.

2. Pate next contends that the trial court erred by dismissing a juror without sufficient cause. We disagree.

"Under OCGA § 15-12-172, a trial court is vested with the discretion to discharge a juror and to replace him or her with an alternate juror at any time during the proceedings, as long as the trial court has a sound legal basis to do so."[12]

After a number of witnesses had testified, the defense called witness Hayley Lawrence to the stand, and the juror at issue passed a note to the judge stating that she knew the witness because of an affiliation with her daughter's cheerleading squad. The trial court then removed the jury and allowed the attorneys to voir dire the individual juror as to whether her acquaintance with the witness would affect her ability to deliberate and impartially apply the law to the facts of the case. After the voir dire, the State moved for the court to excuse the juror from service and seat the alternate juror, who had been present at the trial and listened to the testimony presented. The trial court excused the juror, finding that she believed her acquaintance with the witness and with the school (where the defendant, various witnesses, and the juror's son had attended classes) made her very uncomfortable and would affect her ability to deliberate in the case. Although she did agree with defense counsel that she would impartially apply the law to the facts of the case, she also expressed a great deal of unease about being involved in the case because of her ties with the school.

After observing voir dire of the juror in question, the court granted the State's motion to excuse her because it determined that her ability to deliberate would be compromised by her connections to

---

[10] (Citations omitted.) *Connelly v. State*, 295 Ga. App. 765, 768 (3) (673 SE2d 274) (2009).

[11] *Damerow v. State*, 310 Ga. App. 530, 537 (4) (a) (i) (714 SE2d 82) (2011) (reviewing for ineffective assistance of counsel).

[12] (Citations and footnote omitted.) *Dunn v. State*, 308 Ga. App. 103, 104 (1) (a) (706 SE2d 596) (2011).

the school community and at least one witness. Although the juror did state that she would make a determination of the verdict based on the facts presented during testimony and the law, the trial court was within its discretion to excuse her based on the totality of the circumstances. "This ruling had a sound basis in that it served the legally relevant purpose of preserving public respect for the integrity of the judicial process."[13]

3. Pate contends that the trial court erred by admitting bad character evidence that was irrelevant to the proceedings. We disagree.

> Generally, the . . . character of the parties and especially their conduct in other transactions are irrelevant matter unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct. OCGA § 24-2-2. Whether to admit evidence is a matter resting in the trial court's sound discretion, and evidence that is relevant and material to an issue in the case is not rendered inadmissible because it incidentally places the defendant's character in issue.[14]

Moreover, "[a]ny party, including the party calling the witness, may attack the credibility of a witness."[15]

During the defense's case, Pate called Justin Crutcher, who testified to being Pate's best friend, as a witness. Crutcher testified that he had attended a party with Kaila and overheard her saying that M. R. had fabricated the allegations against Pate and that the attack never occurred. The State then cross-examined Crutcher, and Pate contends that the following line of questioning resulted in the admission of irrelevant bad character evidence of Pate.

> THE STATE: Did you ever hear of any allegations of the knife being involved with the alleged rape . . . ?
> WITNESS: No, sir.
> THE STATE: Back in 2007[,] what kind of knife did the Defendant carry?
> WITNESS: He never carried a knife.
> THE STATE: Ever?

---

[13] (Citation and punctuation omitted.) *Murray v. State*, 276 Ga. 396, 399 (4) (578 SE2d 853) (2003). See also *Moon v. State*, 288 Ga. 508, 512-513 (5) (705 SE2d 649) (2011).

[14] (Punctuation omitted.) *Hernandez v. State*, 304 Ga. App. 435, 437 (3) (696 SE2d 155) (2010).

[15] OCGA § 24-9-81 (2005).

WITNESS: Ever.

THE STATE: Did you know the Defendant in May of 2007?

WITNESS: Yes, sir.

THE STATE: And were you with the Defendant on Memorial Day 2007 at the pool at the Windsong Subdivision?

WITNESS: Yes, sir.

THE STATE: I'm going to ask you again, what kind of knife did the Defendant carry at that time?

WITNESS: Brandon did not have a knife, sir.

THE STATE: Were you involved in an altercation on that day . . . ?

At this point, the defendant objected, and the State proffered its line of questioning prior to the trial court overruling the defendant's objections on character and relevance. The State continued its questioning before the jury, asking Crutcher if he and the defendant were in a confrontation at the pool. Crutcher testified that some individuals asked them to leave. The questioning continued as follows:

THE STATE: . . . [D]id you see [the Defendant] with a knife?

WITNESS: No, sir.

THE STATE: Did you hear him issue any threats?

WITNESS: No, sir.

At the close of the defense's case, the State called as rebuttal witnesses Sam Bannister and Deidra Lawrence, both of whom testified that Pate possessed a knife at a pool party Memorial Day weekend in 2007. Lawrence also testified that Crutcher was at the party with Pate, and Pate made no effort to conceal the knife.

Here, the initial question posed to Crutcher by the State — what type of knife Pate carried in 2007 — did not inject bad character evidence into the trial because the mere fact that Pate carried a knife does not impute bad character.[16] Nevertheless, the rebuttal testimony presented by the State from Bannister and Lawrence that Pate displayed the knife in addition to the questions posed to Crutcher describing the poolside incident as an altercation imputed bad character to Pate.[17] As stated above, however, the simple fact that evidence imputes bad character to the defendant does not necessarily

---

[16] Cf. *Sweet v. State*, 278 Ga. 320, 325 (7) (602 SE2d 603) (2004) ("gun ownership and the custom of carrying a gun do not, by themselves, impute bad character.") (citation and punctuation omitted).

[17] See *Lee v. State*, 308 Ga. App. 711, 714-715 (2) (708 SE2d 633) (2011) (harmless error analysis on bad character evidence based on brandishing a gun rather than merely possessing

mean that the evidence is inadmissible. In this case, Crutcher's testimony called into question the truthfulness of many of the State's witnesses, and therefore, evidence of the poolside incident during which Pate allegedly possessed a knife in Crutcher's presence was admissible for purposes of impeaching Crutcher. Therefore, there was no abuse of discretion by the trial court in admitting the evidence.[18]

4. Pate next contends that the trial court erred by refusing to allow him to cross-examine M. R. regarding an alleged drug sale at school, which violated his Sixth Amendment right to confrontation. We disagree.

> The confrontation clause of the Sixth Amendment grants criminal defendants the right to impeach the prosecution's witnesses by cross-examining them with regard to whether they are currently on probation for a juvenile offense or have an open or pending case in juvenile court, or whether they are currently committed to the custody of the Department of Juvenile Justice. The right of a defendant to cross-examine a [S]tate witness to show that the witness slanted his testimony in favor of the [S]tate in order to obtain more favorable treatment overcomes the [S]tate's interest in maintaining the confidentiality of juvenile court proceedings. This right to cross-examination is subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation.[19]

Moreover, while

> [t]he Sixth Amendment guarantees to the defendant the right to inquire about a witness's current probationary status or pending criminal charges in an effort to show that the witness has possible biases, prejudices, or ulterior motives that may influence his testimony[,] . . . the substantive facts

---

a gun); *Moon v. State*, 202 Ga. App. 500, 501-502 (2) (414 SE2d 721) (1992) (reversing conviction based on admission of bad character evidence of brandishing a weapon rather than merely possessing a weapon).

[18] See *Peterson v. State*, 274 Ga. 165, 169-170 (4) (549 SE2d 387) (2001) (holding that trial court did not err by admitting for impeachment purposes evidence that defendant struck daughter in response to his testimony that he would never intentionally hurt her).

[19] (Punctuation and footnotes omitted.) *Hibbs v. State*, 299 Ga. App. 723, 724-725 (2) (683 SE2d 329) (2009).

underlying an open juvenile case would not generally be admissible.[20]

On December 12, 2008, M. R. was alleged to have sold marijuana on the campus of her high school, which incident was reported to school officials on December 15 — the same date upon which M. R. made the outcry to her father. The delinquency petition in connection with the December 12 narcotic sale was not filed until January 2009.[21]

After the parties examined M. R.'s juvenile records in camera, the trial court determined that any cross-examination by the defense of M. R. regarding the matter would be an overly speculative attack on her credibility because she was not on probation and no charges were pending against her, either at the time of trial (March 2010) or at the time of her outcry (December 2008). Given these conclusions combined with Pate's failure to "show evidence of a deal or any hope of a deal between [M. R.] and the State," the trial court did not abuse its discretion by prohibiting Pate from impeaching M. R. with impermissible character evidence concerning her sale of narcotics at school.[22]

5. Pate maintains that the trial court also erred by partially closing the courtroom during the testimonies of M. R. and M. K. We disagree.

> During a trial in a court of any case in which the evidence is vulgar and obscene or relates to the improper acts of the sexes, and tends to debauch the morals of the young, the presiding judge shall have the right in his discretion and on his own motion, or on motion of a party or his attorney, to hear and try the case after clearing the courtroom of all or any portion of the audience.[23]

---

[20] (Punctuation and footnote omitted.) *Wright v. State*, 279 Ga. 498, 499 (2) (b) (614 SE2d 56) (2005).

[21] It appears from the record that M. R. was adjudicated delinquent on January 29, but there was disagreement between counsel for Pate and for the State about the exact timeline of the delinquency petition. "It is incumbent upon [Pate], as appellant, to provide this Court with a record from which we can ascertain whether the trial court correctly ruled upon h[is] motion . . . , and mere assertions of error in h[is] brief do not suffice. In the absence of a sufficient record, we must assume that the trial court's ruling was proper . . . ." (Citations omitted.) *Self v. State*, 232 Ga. App. 735, 737 (3) (503 SE2d 625) (1998).

[22] *Sapp v. State*, 263 Ga. App. 122, 123 (587 SE2d 267) (2003). See also *Self*, 232 Ga. App. at 737 (3).

[23] OCGA § 17-8-53.

Although M. R. and M. K. were 16 at the time of trial, another statute provides that

> [i]n the trial of any criminal case, when any person under the age of 16 is testifying concerning any sex offense, the court shall clear the courtroom of all persons except parties to the cause and their immediate families or guardians, attorneys and their secretaries, officers of the court, jurors, newspaper reporters or broadcasters, and court reporters.[24]

"[T]his Court [has] held that the partial closure permitted under [OCGA § 17-8-54] does not violate a defendant's Sixth Amendment right to a public trial."[25]

In this case, the trial court did not abuse its discretion by partially closing the courtroom during the testimonies of M. R. and M. K., who both testified that at the ages of 13 years old, Pate, during separate incidents, forced them to engage in sexual intercourse with threats of violence to family members, in one instance, brandishing a knife.[26] The trial court limited the closure by allowing Pate, the attorneys for the defense and the State, immediate families or guardians of the witnesses, immediate families or guardians of Pate, the attorneys' employees, officers of the court, sheriff's deputies, and any members of the press to remain in the courtroom, which this Court has previously determined acceptable pursuant to the Sixth Amendment,[27] and Pate has failed to present any reason to support his argument that such a partial closure in this instance was a violation of his right to a public trial. Accordingly, this enumeration is without merit.

6. Finally, Pate maintains that the trial court erred by allowing irrelevant and prejudicial testimony concerning alleged harassment of M. R. by Pate and his friends, including Crutcher. We disagree.

> [U]nless the potential for prejudice substantially outweighs probative value, Georgia law favors the admission of relevant evidence, no matter how slight its probative value. And evidence is relevant if it tends to prove or to disprove a

---

[24] OCGA § 17-8-54.

[25] *Delgado v. State*, 287 Ga. App. 273, 279 (2) (651 SE2d 201) (2007), citing *Hunt v. State*, 268 Ga. App. 568, 571 (1) (602 SE2d 312) (2004).

[26] See *Sears v. State*, 182 Ga. App. 480, 485 (8) (356 SE2d 72) (1987), overruled on other grounds as stated in *Johnston v. State*, 213 Ga. App. 579, 580 (445 SE2d 566) (1994).

[27] See *Clarke v. State*, 309 Ga. App. 749, 751 (2) (711 SE2d 339) (2011); *Delgado*, 287 Ga. App. at 279 (2); *Sears*, 182 Ga. App. at 485 (8).

material fact at issue, and every act or circumstance which serves to explain or throw light upon a material issue is relevant. Indeed, even where the relevancy or competency is doubtful, the evidence should be admitted, and its weight left to the determination of the jury.[28]

As an initial matter, because Toves's hearsay testimony of any of the instances of harassment was cumulative to M. R.'s direct testimony on the issue, there was no error on the part of the trial court to admit it simply on the basis that it was hearsay.[29] As for Pate's argument that the trial court erred by allowing the testimony because it was irrelevant, there was no abuse of discretion because the testimony was relevant to rebut the attack on her credibility as well as the credibility of Kaila.[30] Accordingly, this enumeration is without merit.

*Judgment affirmed. Miller, J., concurs. Ellington, C. J., concurs in judgment only.*

DECIDED MARCH 27, 2012 — 

*Mark J. Issa, Jonathon J. Majeske, Ashutosh S. Joshi,* for appellant.
*Daniel J. Porter, District Attorney, John A. Warr, Assistant District Attorney,* for appellee.

---

[28] (Punctuation and footnotes omitted.) *Mims v. State,* 314 Ga. App. 170, 173-174 (2) (723 SE2d 486) (2012).

[29] See *Belmar v. State,* 279 Ga. 795, 797 (2) (621 SE2d 441) (2005) ("The erroneous admission of hearsay testimony is not reversible error where the hearsay is cumulative of legally admissible evidence of the same fact.") (citation omitted).

[30] See, e.g., *Mims,* 314 Ga. App. at 174 (2).