**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 24, 2016**

# In the Court of Appeals of Georgia

A16A0330. JONES v. SPRUILL.

BRANCH, Judge.

Mack Spruill obtained a family violence protective order from the Clayton County Superior Court against his brother, Antwione Jones. Following entry of the order, Jones filed both a motion for reconsideration and a motion for a new trial, and he requested a hearing on both. The trial court thereafter dismissed both motions without holding a hearing on either. Jones now appeals, arguing that the trial court erred by dismissing his motion for a new trial without affording him a hearing on the same.[1] Jones further contends that the trial court was without jurisdiction to enter an order against him under Georgia's Family Violence Act, OCGA § 19-13-1, et seq.,

---

[1] Spruill has not appealed the trial court's dismissal of his motion for reconsideration.

because conduct between siblings does not fall within the statutory definition of "family violence." We agree with Jones the trial court erred in dismissing his new trial motion without holding a hearing thereon. We further find, however, that the trial court had jurisdiction to enter the protective order at issue, as Jones's conduct constituted an act of family violence under OCGA § 19-13-1. Accordingly, we affirm the order dismissing Jones's new trial motion.

The record shows that on May 1, 2015, Spruill filed a verified application for a temporary protective order against Jones. In that application, Spruill alleged that he and Jones were brothers who formerly resided in the same household, and that on April 30, 2015, Jones had punched him, brandished a gun in his face, and threatened to kill him. Based on this application, the trial court entered a temporary, ex parte family violence protective order and scheduled a hearing on Spruill's petition for May 29. Prior to that hearing, Jones filed a verified response, in which he denied the material allegations of Spruill's petition. Jones also asserted that the petition failed to allege an act of family violence, as he and Spruill were siblings who had not resided in the same household for more than 20 years.

At the May 29 hearing, Spruill testified as to the events that led him to seek the protective order. Spruill stated that Jones was his younger brother, but that the two

have not lived in the same household for more than two decades. According to Spruill, on the evening of April 30 he went to visit Jones at a house owned by Jones's mother-in-law and which was under renovation. During that visit, Jones accused Spruill of stealing $200 from him. When Spruill denied taking the money, Jones punched him several times and then threatened him with a pool cue. Spruill left the house to go to his car, and Jones followed him. The men engaged in further conversation, during which Spruill again attempted to convince his brother that Spruill had not stolen his money. After Spruill got into his car, Jones pulled out a gun, brandished it in his brother's face, and threatened to kill Spruill.

Spruill took pictures of the bruises he suffered as a result of his altercation with Jones, and these pictures were introduced into evidence. Additionally, Spruill testified that Jones had been convicted in 1999 of simple battery and that this conviction resulted from another incident in which Jones had attacked and threatened Spruill. A certified copy of that conviction was introduced and admitted into evidence.

Although he did not testify, Jones appeared at the hearing and was represented by counsel, who cross-examined Spruill. At the conclusion of the hearing, the trial

court found there was probable cause to support the issuance of a protective order,[2] and the court entered the written order later that day. In that order, the trial court specifically found that it had jurisdiction over the parties and over the subject matter of the hearing. The protective order enjoined and restrained Jones from threatening, injuring, harassing, or harming Spruill or any member of his family or household; enjoined and restrained Jones from approaching within 100 yards of either Spruill or his minor children; ordered Jones not to have any contact with Spruill either directly or indirectly, either through other persons or by written or electronic means; required Jones to enroll in a certified family violence intervention program; and ordered Jones to surrender any firearms in his possession to the Clayton County Sheriff's Department.

On June 24, 2015, Jones filed both his motion for reconsideration and his motion for new trial. The trial court dismissed his motion for reconsideration without prejudice on July 1, and dismissed the new trial motion without prejudice on July 15. In each order, the trial court stated that dismissal was appropriate because "[t]he court

---

[2] The court also found that probable cause existed to arrest Jones on charges of aggravated assault and aggravated battery, and ordered that Jones be taken into custody. The record does not show the outcome of any criminal charges filed against Jones, and those charges are not at issue on this appeal.

held a full hearing, with [Jones] represented by counsel, and found sufficient probable cause that an act of family violence occurred between siblings and [Jones] was the primary aggressor."

After the trial court dismissed both his motion for reconsideration and his motion for new trial, Jones filed an application for a discretionary appeal, which this Court granted. This appeal followed.

1. Although the trial court purported to dismiss Jones' motion for new trial, that order was substantively a denial of the motion, and we therefore treat it as such. See *State v. Chapman*, 322 Ga. App. 82, 83 (744 SE2d 77) (2013) ("orders are construed according to their substance and function and not merely by nomenclature") (citations and punctuation omitted) (treating a mistrial granted following a jury verdict as the grant of a motion for a new trial). On appeal, Jones contends that the trial court erred in denying his new trial motion without conducting a hearing. We agree.

Under Georgia law, a trial court is required to hold a hearing before deciding a motion for a new trial. See *Green v. McCart*, 273 Ga. 862-863 (1) (548 SE2d 303) (2001); *Garner Plumbing v. Slate Const.*, 300 Ga. App. 656 (1) (686 SE2d 301) (2009); Uniform Sup. Ct. R. 6.3. Thus, because Jones specifically requested a hearing on his new trial motion, the trial court erred in denying that motion before conducting

5

such a hearing. See *Ricks v. State*, 294 Ga. App. 398, 399 (670 SE2d 164) (2008) (unless waived, movant entitled to a hearing on a motion for new trial); *Shockley v. State*, 230 Ga. 869 (199 SE2d 791) (1973); *Foster v. State*, 230 Ga. 870 (1) (199 SE2d 790) (1973); *Lee v. State*, 308 Ga. App. 711, 716 (3) (708 SE2d 633) (2011).

In most cases, the trial court's failure to hold the requisite hearing on a motion for a new trial would constitute reversible error, requiring us to vacate the order denying the motion and remand the case for a hearing. See, e.g., *Green*, 273 Ga. at 863 (1); *Ricks*, 294 Ga. App. at 399. We find, however, that remand is not required in this case for two reasons. First, as noted above and as discussed more fully in Division 2, the basis for Jones's new trial motion is that the trial court lacked jurisdiction to enter the protective order. And remand is unnecessary where the question on appeal involves subject matter jurisdiction. "The judgment of a court having no jurisdiction of the . . . subject matter . . . is a mere nullity and may be so held in any court when it becomes material to the interest of the parties to consider it." OCGA § 17-9-4. See also *Bush v. State*, 273 Ga. 861 (548 SE2d 302) (2001).

Moreover, in this case, the facts are undisputed and the question presented by Jones's new trial motion is one of law. In such cases, judicial economy dictates that we exercise our discretion to address the "controlling question of law . . . rather than

6

require the same issue to arise on [any subsequent] appeal from denial of the [new trial motion]." *Radio WEBS v. Tele-Media Corp.*, 249 Ga. 598, 604 (2) (292 SE2d 712) (1982) (on appeal from an interlocutory injunction, "[j]udicial economy dictate[d]" that the appellate court decide the "controlling question of law," as that question would control issues relevant to the issuance or denial the permanent injunction) (footnote omitted). See also *Ward v. State*, 248 Ga. 60, 61 (1), n. 1 (281 SE2d 503) (1981) (even where a constitutional issue is not raised in the trial court, then, "so as to avoid the re-litigation of these issues on habeas corpus," the appellate court may exercise its "discretion to decide these questions in the interest of judicial economy") (citation omitted); *Arnold v. State*, 253 Ga. App. 307, 308 (1) (560 SE2d 33) (2002) (where trial court fails to hold an evidentiary hearing on a defendant's ineffective assistance of counsel claim, "[r]emand is unnecessary . . . when it appears as a matter of law that the appellant cannot satisfy the two-prong test to establish ineffectiveness of counsel") (citation and footnote omitted); *J. M. High Co. v. Arrington*, 45 Ga. App. 392 (3) (165 SE 151) (1932) (where the material facts in the case are undisputed and the only issue on appeal is a question of law, "it is unnecessary to send the case back for another hearing in the trial court") (citation

7

omitted). Accordingly, we will proceed to address the merits of Jones's new trial motion, which asserted only that the trial court lacked subject matter jurisdiction.

2. Georgia's Family Violence Act authorizes trial courts, "upon the filing of a verified petition," to "grant any protective order . . . to bring about a cessation of acts of family violence." OCGA § 19-13-4 (a). The statute defines "family violence" as the commission of any felony or the commission of battery, simple battery, simple assault, assault, stalking, criminal damage to property, unlawful restraint, or criminal trespass "between past or present spouses, persons who are parents of the same child, parents and children, stepparents and stepchildren, foster parents and foster children, or *other persons living or formerly living in the same household*[.]" OCGA § 19-13-1. (emphasis supplied).

On appeal, Jones contends that the trial court erred in interpreting OCGA § 19-13-1 to encompass acts committed between siblings. In support of this argument, Jones points to the fact that the legislature has enhanced criminal penalties where certain crimes are committed between family members or "other persons living or formerly living in the same household." The legislature, however, specifically excluded crimes committed between siblings from such enhanced penalties. See OCGA § § 16-5-20 (d); 16-5-21 (k); 16-5-23 (f); 16-5-24 (h) (providing enhanced

8

penalties for the offenses of simple assault, aggravated assault, simple battery, and aggravated battery if the offense "is committed between past or present spouses, persons who are parents of the same child, parents and children, stepparents and stepchildren, foster parents and foster children, or other persons *excluding siblings* living or formerly living in the same household") (emphasis supplied). Thus, Jones argues that despite the absence of any language expressly excluding acts between siblings from the definition of family violence set forth in OCGA § 19-13-1, we should nevertheless interpret the statute so as to exclude such conduct from the act. We disagree.

When appellate courts in Georgia consider the meaning of the statute, we begin with the presumption "that the General Assembly meant what it said and said what it meant." *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (citation and punctuation omitted). Thus, our search for the meaning of a statute "must begin with the words of the statute, and if those words are clear and unambiguous, the search also must end there." *Northeast Atlanta Bonding Co. v. State of Ga.*, 308 Ga. 573, 577-578 (1) (707 SE2d 921) (2011) (citations omitted). See also *Deal*, 294 Ga. at 173 (1) (a) ("if the statutory text is 'clear and unambiguous,' we attribute to the statute its plain meaning, and our search for statutory meaning is at an end") (citation

9

omitted). Here, OCGA § 19-13-1 defines family violence as including the commission of certain acts, including battery and assault, "between persons living or formerly living in the same household." Given this unambiguous language, and given that it is common for siblings to live in the same household at some point in their lives, we must conclude that the legislature intended to include the commission of certain acts between siblings within the scope of the Family Violence Act.[3] Accordingly, the trial court had jurisdiction to enter a protective order against Jones, and his motion for a new trial was without merit. We therefore affirm the denial of that motion.

*Judgment affirmed. Mercier, J., concurs. Ellington, P. J., concurs in judgment only.*

---

[3] This conclusion is reinforced by the fact that, as noted above, in imposing enhanced penalties for certain crimes that could be considered an act of family violence, the legislature incorporated language expressly excluding crimes between siblings from those provisions. We therefore must assume that had the legislature intended to exclude conduct between siblings from the Family Violence Act, it would have included express language to that effect in OCGA § 19-13-1.