## S06A1691. HUNTER v. THE STATE.
### (642 SE2d 668)

HINES, Justice.

Antonio Hunter appeals his convictions for malice murder, aggravated assault, and two counts of possession of a firearm during the commission of a felony, in connection with the death of Jamel Boyd and the shooting of Sultan Ahmad Abuwi. For the reasons that follow, we affirm.[1]

Construed to support the verdicts, the evidence showed that Abuwi was driving a car with his half-brother, Boyd, in the passenger seat. They stopped and talked to Hunter; Hunter wanted to buy some illegal drugs. Leaving Hunter, Abuwi and Boyd drove to Boyd's house, where Boyd picked up a quantity of drugs. They returned to where Hunter was waiting, and Hunter and his cousin, James King, got into the back seat. Abuwi drove a short way and stopped; Hunter produced a handgun, said "you know what it is," and shot Boyd twice in the head. Hunter exited the car, and as he did so, shot Abuwi, grazing his head. Abuwi reached for a pistol that was under Boyd's leg and returned fire; King also exited the car. Abuwi drove away, lost control of the car two blocks from the scene of the shooting, and it came to rest against a house, where Abuwi left the car and sought assistance.

When police arrested Hunter, and he consented to a test to determine if gunpowder residue was on his hands, he continually attempted to pull his hands away from the officer conducting the test.[2]

---

[1] Boyd died on March 2, 2003. On April 23, 2003, a Chatham County grand jury indicted Hunter for the malice murder of Boyd, possession of a firearm during the commission of malice murder, felony murder of Boyd while in the commission of aggravated assault, possession of a firearm during the commission of felony murder, aggravated assault by shooting Abuwi, possession of a firearm during the commission of aggravated assault against Abuwi, and possession of a firearm by a convicted felon. Hunter was tried before a jury on November 8-9, 2004, and found guilty of all charges except possession of a firearm by a convicted felon; that charge was not submitted to the jury and an order of nolle prosequi as to that charge was entered on November 22, 2004. On December 7, 2004, Hunter was sentenced to life in prison for malice murder, a consecutive term of five years for possession of a firearm during the commission of malice murder, a term of twenty years for aggravated assault against Abuwi, and a term of five years for possession of a firearm during that aggravated assault; the charge of possession of a firearm during the commission of felony murder merged with felony murder, which was vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 372-374 (5) (434 SE2d 479) (1993). Hunter moved for a new trial on December 17, 2004, amended the motion on August 30, 2005, and again on September 15, 2005. The motion as amended was denied on March 2, 2006. Hunter filed a notice of appeal on April 3, 2006. The appeal was docketed in this Court on June 8, 2006, and submitted for decision on July 31, 2006.

[2] The test was negative for gunpowder residue. The defense stipulated that a person could fire a handgun and not test positive for gunpowder residue "due to normal activity and the passage of time (roughly four hours under lab conditions), sweat, washing, and having something between the firing handgun and the hand." Hunter's test was performed over ten hours after the shooting.

1. The evidence was sufficient to enable a rational trier of fact to find Hunter guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Hunter did not request that the trial court instruct the jury on the law of justification based upon self-defense. He now contends that justification was his sole defense, and that, even in the absence of a written request, the court was required to give the instruction, asserting that there was some evidence to support it. See *Tarvestad v. State*, 261 Ga. 605, 606 (409 SE2d 513) (1991).

First, it does not appear that justification was, in fact, Hunter's sole defense; during closing argument, he denied that he was at the scene of the crimes, and argued that the State had failed to meet its burden of proof. Second, even if justification is asserted as the sole defense, the instruction must be warranted by the evidence. See *Alexis v. State*, 273 Ga. 423, 426 (3) (541 SE2d 636) (2001).

> "[A] person is justified in using force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent death or great bodily injury to himself. . . ." OCGA § 16-3-21 (a). To establish justification, a defendant must show the circumstances were such as to excite the fears of a reasonable person that his safety was in danger. [Cit.]

*Andrews v. State*, 267 Ga. 473, 474 (1) (480 SE2d 29) (1997).

Hunter did not testify, no custodial statement of his was admitted into evidence, and no other evidence was placed before the jury containing any version of events from his own perspective. Nonetheless, Hunter argues that King's testimony supports a justification instruction. King testified that: Hunter asked him to join him in the car; Abuwi and another man were in the front seat; he did not recognize the other man, did not remember where Abuwi sat, and did not converse with them; the man in the passenger seat handed Hunter the drugs; Hunter said "it don't look real" and tried to return the drugs; the man in the passenger seat produced a handgun, pointed it toward the back seat, and said "get out the car"; King and Hunter did so; the car drove off rapidly, with squealing tires; he and Hunter began walking; two or three minutes later, Hunter said that the car was coming back; "something told me to run and I ran"; Hunter ran in a different direction, but both men ran away from the car; seconds later, King heard gunshots, at which time Hunter was running through a different yard than King was; two hours later, he went to the house of a cousin, where he met Hunter; he did not discuss the incident with Hunter; and he "never, ever" saw Hunter with a

handgun. Hunter asserts that this testimony allows the inference that he feared for his life when the car bearing Boyd and Abuwi returned, even though forensic evidence was that Boyd had been shot from behind while in the car. However, even if King's testimony supported a version of events in which it was physically possible for Hunter to have shot Boyd, there is no evidence of any threat so as to give rise to a reasonable belief that Hunter must shoot Boyd in the back of the head to avoid death or great bodily injury to himself. There is no evidence of any "second encounter" between Hunter and Boyd involving a handgun, either in King's testimony, or in Abuwi's; thus, nothing in the evidence warranted an instruction on self-defense. See *Bowden v. State*, 270 Ga. 19, 21 (3) (504 SE2d 699) (1998).

3. Hunter requested that the jury be instructed on voluntary manslaughter as a lesser included offense of malice murder; the court did not give the charge.[3] "It is a question of law whether there is any evidence to support a finding that the defendant acted 'solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person. . . .' OCGA § 16-5-2 (a). [Cit.]" *Paul v. State*, 274 Ga. 601, 605 (3) (b) (555 SE2d 716) (2001). Again, Hunter contends that King's testimony shows that such an instruction was warranted. And again, King's testimony indicates that Hunter did not shoot Boyd, but even if that can be inferred, the testimony does not indicate the sort of provocation that would warrant the requested charge. When asked if Hunter and the man in the passenger's seat argued over the drugs, King testified that it was "[n]ot really an argument, he was just telling him that he ain't — the drugs ain't looked real." There is no evidence that, at the time the fatal shots were fired, Hunter was acting with the sort of anger or passion which would support the requested charge. See *Worthem v. State*, 270 Ga. 469, 471 (2) (509 SE2d 922) (1999); *Woody v. State*, 262 Ga. 327 (2) (418 SE2d 35) (1992).

4. Hunter also requested a jury instruction that the jury may consider whether the testimony of a witness might be slanted by a grant of immunity from prosecution or a promise of leniency from the State, contending that Abuwi could have been charged with being a

---

[3] Under OCGA § 16-5-2 (a):

A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person; however, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder.

party to the crime of selling illegal drugs. But, there is no evidence that Abuwi testified in exchange for immunity or leniency, and it was not error to refuse to give the charge. *Wilson v. State*, 274 Ga. 637, 640 (7) (555 SE2d 725) (2001).

5. Hunter did not request a jury charge on false swearing under OCGA § 24-9-85 (b),[4] but now asserts that one was authorized by Abuwi's testimony, particularly his admission that he lied under oath during a preliminary hearing when asked if Boyd sold drugs.[5] First, Hunter did not request any such instruction and it is thus not error to fail to give the charge. *Blackstock v. State*, 270 Ga. 117, 119 (5) (506 SE2d 130) (1998). Moreover, a review of the jury instructions in their entirety, which included instructions on the credibility of witnesses and impeachment, establishes that had there been any error in the court's failure to give a charge based on OCGA § 24-9-85 (b), it would have been harmless. Id.

6. Hunter contends that he did not receive effective representation by counsel at trial because counsel did not request a jury instruction on the defense of justification. In order to prevail on a claim of ineffective assistance of trial counsel, Hunter must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). However, as discussed in Division 2, supra, no justification charge was warranted. Consequently, Hunter does not meet his burden to show that trial counsel's failure to request the instruction was deficient performance.

7. Finally, in this Court, for the first time, Hunter asserts that he did not receive effective assistance of prior appellate counsel, who represented him in his motion for new trial.[6] Specifically, he contends that prior appellate counsel was ineffective for not including in the motion for new trial a claim of ineffective assistance of trial counsel based on trial counsel's failure to request a jury instruction on false swearing under OCGA § 24-9-85 (b). In order to prevail on his claim of ineffective assistance of appellate counsel, Hunter must here again

---

[4] OCGA § 24-9-85 (b) reads: "[i]f a witness shall willfully and knowingly swear falsely, his testimony shall be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence."

[5] Hunter also contends that Abuwi testified that he lied under oath to the grand jury. At trial, he was asked if a police officer "asked you about not being truthful in the grand jury . . . [a]nd you acknowledged to her that you didn't tell the truth," to which Abuwi answered: "Yes."

[6] At the first scheduled hearing on his motion for new trial, Hunter stated that he was dissatisfied with appointed counsel and wanted to be represented by retained counsel. The trial court granted a continuance, and it is retained appellate counsel who Hunter now asserts was ineffective.

show both that appellate counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. *Battles v. Chapman*, 269 Ga. 702 (506 SE2d 838) (1998). See *Sloan v. Sanders*, 271 Ga. 299 (519 SE2d 219) (1999).

Hunter suggests that because this is his first opportunity to raise this issue, it may be necessary for this Court to remand the case to the trial court for further proceedings on this claim. Assuming that a remand would be an appropriate procedure in this case, it is not necessary to remand an appeal when the appellate court can determine from the record whether the appellant has satisfied the test to establish ineffective assistance of counsel. See *Hammond v. State*, 260 Ga. 591, 599-600 (10) (398 SE2d 168) (1990); *Stuart v. State*, 274 Ga. App. 120, 121 (616 SE2d 855) (2005). And here, as stated in Division 5, supra, not instructing the jury on false swearing was harmless. Accordingly, trial counsel's failure to request the instruction did not affect the outcome of Hunter's trial, and the failure of prior appellate counsel to raise a claim of ineffective assistance of counsel based upon this issue could not prejudice Hunter.

*Judgments affirmed. All the Justices concur.*

DECIDED MARCH 19, 2007.

*Jackson & Schiavone, Steven L. Sparger*, for appellant.

*Spencer Lawton, Jr., District Attorney, Ann M. Elmore, Assistant District Attorney, Thurbert E. Baker, Attorney General, Edwina A. Watkins, Assistant Attorney General*, for appellee.