**FIRST DIVISION
BARNES, P. J.,
MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**September 9, 2019**

# In the Court of Appeals of Georgia

A19A1477. WILSON v. THE STATE.

MERCIER, Judge.

A jury found Samuel Wilson guilty of aggravated assault with the intent to rape (as a lesser included offense of the charged crime of rape), aggravated sodomy and false imprisonment. Following his convictions, Wilson filed a motion for new trial, which the trial court denied. Wilson appeals, claiming that the trial court erred by failing to give certain jury charges, that his trial counsel was ineffective for failing to request those jury charges, and that the trial court erred by admitting hearsay and bolstering testimony. Finding no error, we affirm.

Viewed in the light most favorable to the verdict, the evidence at trial showed the following. See *Herrington v. State*, 300 Ga. 149 (1) (a) (794 SE2d 145) (2016). On October 13, 2014, the victim met Malcom White, whom she was dating, and

Wilson, a friend of White's, at the Five Points MARTA station. The three of them went to White's apartment, where they smoked marijuana. After they finished smoking, White and the victim went into White's bedroom and had consensual sexual intercourse. All three spent the night at the apartment. Wilson slept in another bedroom, and the following morning all three smoked marijuana together. Thereafter, White left the apartment, telling the victim that he needed to go to the store. The victim stayed at the apartment and took a nap in White's room. She awoke to find Wilson next to her on the bed, watching a movie. Wilson asked the victim if he could perform an oral sex act on her. The victim said no, rose from the bed, grabbed her purse to make sure Wilson had not stolen anything from her and asked him where White was. Wilson responded that White was "not coming back," then he reached for the victim's neck and pinned her to the bed. Wilson then grabbed her wrists and performed oral sex on her. The victim fought with Wilson and he turned her over so that she was lying on her stomach. Wilson pulled out a condom, which the victim grabbed from him thinking that he would not continue the sexual assault without a condom, but Wilson produced a second condom. The victim testified that Wilson wore the second condom while raping her. The victim continued to fight with Wilson throughout the assault and tried to move off of the bed. Wilson eventually stopped the

2

assault, and the victim ran from the apartment. As she left the apartment, the victim realized that she still had the first condom in her hand, and she threw it over the apartment building stairwell into some nearby bushes.

The victim called a friend, who drove to pick her up. The victim's friend testified that when she picked the victim up, the victim was crying and seemed scared. The victim's friend called the police and reported what happened.

Following the phone call, police officers met the victim at White's apartment. The victim then went to Grady Hospital for a sexual assault examination. However, she used the restroom prior to the examination. The physician who conducted the sexual assault exam testified that the victim was "pretty tearful" during the exam and he had to stop a few times. He stated that the exam did not reveal any obvious signs of physical trauma, but the physician noted that such is "quite often" the case in sexual assault exams.

The detective investigating the case testified that he obtained a search warrant for White's apartment. During the search of the area outside the apartment, a condom was found where the victim had described throwing the first condom, and two condom wrappers, matching the description provided by the victim, were found next

to the bed. The victim identified Wilson in a photographic line up and during trial as the individual who assaulted her.

The State called White to testify. He testified that he dated the victim, but that Wilson was his "best friend" and on the morning of the incident he told Wilson "if he can work his mojo, if he wanted to he could try [the victim] up[.]" He stated that he told Wilson that he could "try" the victim because White "share[s] everything with [Wilson]" and that they had "shared" female partners before. White testified that he then left the apartment and went to work. Later that evening, Wilson contacted White and told him that "he tried [the victim] up and she wasn't going for it, and she had got upset at him . . . . She said that he had raped her[.]" Wilson told White that he did not rape the victim but that he tried to perform oral sex on her, the victim "got mad," they "got into a tussle," and "he didn't let her leave." White testified that he did not want to see his best friend go to jail and that he believed Wilson's account. White stated that he was testifying because he was under subpoena and the State had not promised him any leniency regarding his pending criminal indictments for forgery and theft by receiving stolen property.

1. Wilson claims that the trial court erred by failing to provide a jury instruction regarding leniency granted to witnesses in exchange for testimony and a jury

4

instruction regarding accomplice testimony. Because Wilson admittedly failed to request these charges or raise these objections at trial,

> his claim[s are] reviewed on appeal only for plain error, meaning that we will reverse the trial court only if the instructional error[s were] not affirmatively waived, [were] obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings.

*Herrington*, supra at 151 (2) (citation and punctuation omitted); see OCGA § 17-8-58 (b) (failure to object to the failure to charge the jury precludes appellate review unless the charge constitutes plain error); *Shaw v. State*, 292 Ga. 871, 872-873 (2) (742 SE2d 707) (2013).

(a) Wilson complains that the trial court did not instruct the jury regarding leniency that could have been granted to White in exchange for his testimony. Specifically, he claims that the trial court should have given the following charge, sua sponte: "In assessing the credibility of a witness, you may consider any possible motive in testifying, if shown. In that regard you are authorized to consider any possible pending prosecutions, negotiated pleas, grants of immunity or leniency, or similar matters. You alone shall decide the believability of the witnesses." Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2019), § 1.31.80.

5

White specifically testified that he was not promised any leniency regarding his two pending criminal indictments. Additionally, the detective testified that White was not promised any leniency in exchange for his testimony at Wilson's trial, and that White's pending criminal prosecution was not discussed at all. As there was no evidence that White testified in exchange for immunity or leniency, the trial court did not err by not giving the charge. See *Hunter v. State*, 281 Ga. 693, 695-696 (4) (642 SE2d 668) (2007).

(b) Wilson claims that White was an accomplice and as such the trial court erred by not charging the jury on accomplice testimony. Wilson claims that the following unrequested charge should have been given:

> An exception to [the single witness] rule is made in the case of (specify felony charge), where the witness is an accomplice. The testimony of the accomplice alone is not sufficient to warrant a conviction. The accomplice's testimony must be supported by other evidence of some type, and that evidence must be such as would lead to the inference of the guilt of the accused independent of the testimony of the accomplice.

> It is not required that supporting evidence be sufficient to warrant a conviction or that the testimony of the accomplice be supported in every material particular.

Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2019), § 1.31.92.

"It is error to fail to give a jury instruction on accomplice liability where there is slight evidence supporting a finding that a witness was an accomplice." *Walter v. State*, 304 Ga. 760, 766 (3) (b) (822 SE2d 266) (2018) (citation omitted). A witness is an accomplice if he, in relevant part, "[i]ntentionally aids or abets in the commission of the crime; or [i]ntentionally advises [or] encourages . . . another to commit the crime." OCGA § 16-2-20 (b); see *Walter*, supra. "Mere presence or approval of a criminal act is not sufficient to render one a party to the crime, and a conviction as a party to a crime requires proof that the defendant shared a common criminal intent with the principal perpetrator of the crime." *Walter*, supra (citation and punctuation omitted). Criminal intent "may be inferred from that person's conduct before, during, and after the commission of the crime." Id. (citation omitted).

Wilson argues that White was an accomplice because he told him "if he can work his mojo, if he wanted to he could try [the victim]." Therefore, Wilson claims that the trial court committed plain error by failing to instruct the jury that accomplice testimony must be corroborated, given that the court instructed the jury that "[t]he testimony of a single witness, if believed, is sufficient to establish a fact[.]" But White did not testify that he encouraged Wilson to assault the victim; rather he testified that if Wilson could "work his mojo" he could "try" the victim and that he and Wilson had

7

"shared" sexual partners in the past. Additionally, White was not present during the commission of the crime, and he testified at trial that he did not believe that Wilson had assaulted the victim. Wilson points to no evidence that White knew that Wilson was planning on assaulting the victim, and he fails to cite precedent requiring an accomplice-corroboration instruction under circumstances similar to those presented here. See *Walter*, supra at 766-767 (3) (b). "An error is plain if it is clear or obvious under current law. An error cannot be plain where there is no controlling authority on point." Id. (citation and punctuation omitted). As such, we cannot conclude that the trial court committed obvious error in failing to instruct the jury on the need for corroboration of accomplice testimony. See id. (the trial court's failure to give a jury charge on accomplice testimony was not plain error even when the alleged accomplice drove the defendants to the crime scene, some of whom she knew were armed, when she did not know what the defendants were planning); see generally *Herrington*, supra.

2. In related enumerated errors, Wilson complains that he did not receive effective representation at trial because his counsel did not request the leniency and accomplice jury charges. "In order to prevail on a claim of ineffective assistance of trial counsel, [Wilson] must show both that counsel's performance was deficient, and

that the deficient performance was prejudicial to his defense." *Hunter*, supra at 696 (6) (citations omitted). As discussed in Division 1, the leniency and accomplice jury charges were not warranted by the evidence. As such, Wilson failed to meet his burden to show that trial counsel's failure to request the instructions was deficient performance. See id.

3. Wilson claims that the trial court erred in admitting hearsay and bolstering testimony through three witnesses: the physician, the detective, and the victim's friend. The three witnesses all testified and repeated what the victim told them regarding the assault in the immediate aftermath.[1] "We review the admission of evidence for an abuse of discretion." *Adkins v. State*, 301 Ga. 153, 158 (3) (a) (800 SE2d 341) (2017) (citation omitted).

(a) "The credibility of a witness shall be a matter to be determined by the trier of fact[.]" OCGA § 24-6-620. "A witness, even an expert, can never bolster the credibility of another witness as to whether the witness is telling the truth." *Adkins*,

---

[1] The witnesses testified with differing degrees of specificity regarding the assault. The physician stated that the victim told him that she had consensual sex with "a friend or ex-boyfriend," then a different friend "performed oral sex on her and then raped her[.]" The detective testified that the victim had recounted the events in detail, which closely mirrored the victim's trial testimony. The victim's friend merely testified that the victim told her that "the person that was there with her forced himself upon her."

supra (citations omitted). "When a witness's statement does not directly address the credibility of another witness, however, there is no improper bolstering. And when we evaluate whether testimony constitutes improper bolstering, we consider the disputed testimony in context." *Brown v. State*, 302 Ga. 454, 460-461 (2) (b) (807 SE2d 369) (2017) (citations omitted). Here, none of the three witnesses opined or spoke directly about the victim's truthfulness. Instead they recounted what the victim had told them. This type of testimony does not constitute improper bolstering. See generally *Abney v. State*, ____ Ga. _____ , 13 (3) (b) (Case No. S19A0741) (decided August 5, 2019).

(b) "[A]n out-of-court statement made by a witness is not hearsay if the witness testifies at the time of trial or hearing, is subject to cross-examination concerning the statement, and the statement is admissible as a prior consistent statement under OCGA § 24-6-613." *Brown*, supra at 458 (2) (a); OCGA § 24-8-801 (d) (1) (A). "[A] witness's prior consistent statement is admissible only when . . . the veracity of a witness's trial testimony has been placed in issue at trial[.]" *Dimauro v. State*, 341 Ga. App. 710, 725 (5) (801 SE2d 558) (2017) (citation omitted). While a prior consistent statement can be admitted to rehabilitate a witness if it logically rebuts "*any* attack on a witness's credibility," it cannot be admitted "for attacks upon [her]

10

character for truthfulness or evidence of [her] prior convictions." *Walters v. State*, 335 Ga. App. 12, 14 (780 SE2d 720) (2015). Here, the victim testified at trial and was subject to-cross examination. See *Brown*, supra. And, for reasons that follow, her prior consistent statements were admissible.

A review of the record reveals that part of Wilson's trial strategy was to discredit the victim by attacking her memory of the assault. In his opening argument, Wilson claimed that the victim could not remember what had happened because she had smoked marijuana. During his cross-examination of the victim, Wilson's trial counsel repeatedly asked about her use of marijuana prior to the assault, and the affect of marijuana on her memory.

Thus, while Wilson did not call the victim a "liar," he nevertheless attacked her credibility by suggesting that her account of the events was not believable due to her use of marijuana. See *Walters*, supra at 17. Because the victim's credibility was attacked, her prior consistent statements to the physician, the detective and her friend were admissible if they "logically rebutted" the attack. See *Walters*, supra at 17 (citing OCGA § 24-6-613 (c)). The victim's three prior statements, given within hours of the assault, that Wilson performed non-consensual oral sex on her and then raped her logically rebutted Wilson's claims that the victim's marijuana use had so

11

clouded her memory that she could not remember what happened. See generally id.;

*United States v. Evans*, 754 Fed. Appx. 898, 902-903 (II) (B) (11th Cir. 2018) (defendant attacked the victim's credibility by, inter alia, focusing on the victim's alleged inability to remember details based on his mental and drug issues; prior consistent statements were therefore admissible to show consistency in the victim's memories of the event).[2] Thus, the trial court did not abuse its discretion in admitting the testimony of the physician, the detective and the victim's friend regarding the victim's prior consistent statements. See *Walters*, supra at 17.

*Judgment affirmed. Barnes, P. J., and Brown, J., concur.*

---

[2] As many provisions of Georgia's Evidence Code were borrowed from the Federal Rules of Evidence, including the hearsay provisions, when we consider the meaning of these provisions, we may look to decisions of the federal appellate courts construing and applying the Federal Rules, especially the decisions of the United States Supreme Court and the Eleventh Circuit. See *Bolling v. State*, 300 Ga. 694, 698 (2) (797 SE2d 872) (2017); *Olds v. State*, 299 Ga. 65, 69 (2) (786 SE2d 633) (2016).