**FIRST DIVISION**
**BARNES, P. J.,**
**MARKLE and HODGES, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**June 2, 2026**

# In the Court of Appeals of Georgia

A26A0253. CRISWELL v. THE STATE.

HODGES, Judge.

Following a jury trial, Corey Criswell was convicted of armed robbery, attempted armed robbery, three counts of aggravated assault, and possession of a firearm during the commission of a felony. He appeals from the denial of his amended motion for new trial, arguing that the trial court erred in (1) admitting text messages that constituted improper hearsay or bolstering; (2) admitting booking photos depicting his tattoos; and (3) prohibiting him from questioning a key State's witness regarding a prior arrest which purportedly demonstrated her bias against him. Criswell also asserts that his trial counsel was ineffective for failing to lodge a proper objection regarding the text messages and that the cumulative error in this case was not

harmless. Because the challenged text messages did not constitute improper hearsay or bolstering, the tattoo photos were properly admitted for the purpose of identification, and Criswell has not demonstrated any error related to the admissibility of the witness's arrest, we reject his arguments and affirm the trial court's denial of his amended motion for new trial.

Criswell does not challenge the sufficiency of the evidence against him. As a result, "we evaluate [his] several claims of error and ineffective assistance in the light of the overall strength of the State's case, [and] we do not present [the evidence] in the light most favorable to the verdict[]." *Williams v. State*, 318 Ga. 83, 84 n. 2 (896 SE2d 109) (2024).

So viewed, in March 2020, an employee of a Texaco gas station and his friend were closing the station around 1:00 a.m. when a man approached the pair with a firearm. The man pushed the friend down and jumped on the employee. The employee retreated inside the store, and the assailant pushed his gun through the crack of the door and discharged the firearm. Once inside the station, the robber demanded the employee give him money. After the employee dropped the safe key, the robber fired his weapon a second time and then pistol whipped the employee's

face, causing him to bleed. The employee was unsuccessful in opening the station's safe, and the robber demanded the employee hand over whatever money he had in his wallet. The employee complied and handed over all of his money, which consisted of 100-dollar bills. The robber then fled the store while the employee's friend called law enforcement. Video surveillance from the Texaco showed the assailant wearing a hat and bandana obscuring his face, a gray sweatshirt, blue jeans, and white shoes.

The next day, an employee of a nearby Chevron station watched surveillance video of the Texaco robbery that had been posted online. She recognized the robber in the video as a regular customer at her station. Even though the man was masked, she was able to recognize him based on his distinct voice and having seen him wearing similar clothes at her Chevron the night before, only not wearing a sweatshirt or a bandana. Specifically, the employee noted her customer wore the same white shoes, hat, and the same color shirt underneath the sweatshirt. She was also able to recall that the man came into her station the day after the robbery and asked to change out a large number of 100-dollar bills. After viewing the Texaco robbery footage, the Chevron employee reviewed the security footage from her store the night of the robbery, and she observed the customer getting into a white SUV after leaving the station and later

being dropped off to retrieve his green car. While the man was only wearing a white t-shirt when he left the Chevron, he was wearing a gray sweatshirt when he returned. The Chevron employee then contacted law enforcement through text messages to provide the information she had regarding the robbery.

Law enforcement went to speak with the victims from the Texaco station and the Chevron employee. While speaking with the Chevron attendant, law enforcement learned that the suspect drove a distinct green car. Detectives then learned the green car had been in an accident a few days before the robbery and that Criswell was driving the car. At the time of the accident, Criswell was riding with an ex-girlfriend, who worked at a Dollar General near the Chevron. Detectives contacted the ex-girlfriend, who had already seen the video of the Texaco robbery on the news and recognized that Criswell was the robber based on his voice.

Criswell was charged with armed robbery, attempted armed robbery, two counts of aggravated assault for attacking the Texaco employee, another count of aggravated assault for threatening the employee's friend outside the Texaco station, and possession of a firearm during the commission of a felony. Following a jury trial,

Criswell was convicted of all charges. Through counsel, Criswell filed a motion for new trial, later amended, which the trial court denied. This appeal follows.

1. In his first two enumerations of error, Criswell challenges the admissibility of the text messages from the Chevron employee to law enforcement. He argues that the text messages were inadmissible hearsay, improperly bolstered the Chevron employee's testimony at trial, and that his trial counsel was ineffective for failing to lodge a proper objection to the admission of the messages. We are unpersuaded.

At trial, the Chevron employee testified that Criswell came in regularly to play on the store's coin operated amusement machines, and that on the night of the robbery, he had been in her store until approximately 11 p.m. Criswell told the attendant that he was leaving to see his "old lady," but that he would return to continue playing if the store was still open. The State tendered a series of screen captures from the Chevron security video. Criswell's trial counsel vigorously attacked the foundation for these images, largely focused on whether they portrayed the night of the robbery or another night where Criswell, as a regular customer, had come into the station. The State then sought to introduce a text message exchange between the Chevron employee and law enforcement, where she explained her suspicion that the

individual who was in her store was the individual who robbed the Texaco. Criswell objected to the text messages on two grounds: first, that the Chevron employee's statements were "basically just bolstering [her own] testimony; second, that the text messages contained statements by law enforcement and those statements were hearsay.

The trial court determined that the statements by the Chevron employee were not bolstering because the messages contained information beyond what she had already testified to, and concluded the messages by law enforcement were not hearsay because they were not offered for their truth.

(a) Turning first to whether the text messages impermissibly bolstered the Chevron employee's testimony, we note that Criswell has not specifically set forth what texts contained in the five pages of text messages bolstered which parts of the employee's testimony. Instead, he merely discusses the testimony and text messages generally. The rules of this Court require specific references to the record, and Criswell's failure to do so precludes our review. Court of Appeals Rule 25(d)(1)(i); *Bass v. State*, 287 Ga. App. 600 n.1 (653 SE2d 749) (2007) ("It is not the function of this court to cull the record on behalf of a party.") (citation and punctuation omitted).

6

That said, we have reviewed the text messages as a whole and our review demonstrates that the text messages were relevant as to whether the photographs of Criswell at the Texaco were from the night of the robbery or some other night. Criswell's trial counsel thoroughly attacked this timeline, as well as the witness's memory and credibility, both in testing the foundation for the admissibility of the photos as well as during cross-examination. This Court has previously rejected claims of improper bolstering where the credibility of the witness has been eventually attacked. *Evans v. State*, 360 Ga. App. 596, 607(10) (859 SE2d 593) (2021); *Walters v. State*, 335 Ga. App. 12, 17 (780 SE2d 720) (2015). Based on this record, we find no reason to chart a different course, and we conclude that, because the Chevron employee's credibility was eventually attacked, there was no error in admitting any purported bolstering testimony. See *Walters*, 335 Ga. App. at 17.

(b) Regarding hearsay, while Criswell now claims on appeal that the Chevron employee's statements within the text messages were inadmissible hearsay, he does not point to any hearsay objection for such statements at trial. Because Criswell did not object to the employee's statements at trial, we can only review the admission of

such statements for plain error. *Hassan v. State*, 318 Ga. 673, 677(1) (899 SE2d 693) (2024).

> The bar for plain error is a high one: First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Taylor v. State*, 365 Ga. App. 30, 32-33 (877 SE2d 286) (2022) (citation omitted).

Criswell's claim fails the second part of the plain error-test, as the trial court did not commit a clear or obvious legal error. In denying Criswell's motion for new trial, the trial court found that the Chevron employee testified at trial, was subject to cross-examination, and her statements were made to identify Criswell as the robber after perceiving him. As such, the trial court concluded that her statements were not hearsay under OCGA § 24-8-801(d)(1)(C) ("Rule 801(d)(1)(C)") ("A statement shall not be hearsay if the declarant testifies at the trial or hearing and is subject to

8

cross-examination concerning the statement, and the statement is one of identification of a person made after perceiving the person[.]"). Criswell does not challenge these findings, but asks this Court to conclude that "[a]llowing the exception for statements of identification to permit the admission of the five pages of text message screenshots here would allow this limited exception to swallow the general rule prohibiting hearsay."

Criswell does not cite any case law to support his contention and our review of Georgia cases and those from the 11th Circuit has provided no answer as to what type of statements made in what context can be admitted under Rule 801(d)(1)(C) as "one of identification of a person." In fact, our review of cases demonstrates that there is a split among federal courts as to what constitutes such a statement under the rule. Compare *U. S. v. Lopez*, 271 F3d 472, 484-85(III)(D) (3d Cir. 2001) (concluding an out of court statement to law enforcement that a witness had seen the defendants in the area of a crime during the time it was committed was admissible under Rule 801(d)(1)(C)), to *U. S. v. Kaquatosh*, 242 FSupp2d 562, 565(III)(B) (ED Wis. 2003) (excluding out-of-court statements describing defendant committing offenses because such statements are "more accusation than identification [and Rule 801(d)(1)(C)] was

not intended to allow the introduction as substantive evidence of hearsay statements that the defendant did it") (punctuation omitted). Because Georgia law has not clearly addressed whether the Chevron employee's statements are admissible under Rule 801(d)(1)(C), the trial court did not plainly err by admitting the statements. *Dees v. State*, 322 Ga. 498, 502(2) (920 SE2d 626) (2025) (rejecting a plain error challenge to unobjected to hearsay where there was no on-point controlling authority making it unequivocally clear that the trial court erred).

(c) Criswell also contends that he received ineffective assistance of counsel because his counsel failed to raise a proper objection to the Chevron employee's statements being impermissible hearsay. In order to prevail on a claim of ineffective assistance, a defendant must prove both that the performance of his lawyer was deficient and that he was prejudiced by counsel's deficient performance. *Strickland v. Washington*, 466 US 668, 687(III) (104 SCt 2052, 80 LE2d 674) (1984). See also *Rosenbaum v. State*, 320 Ga. 5, 9(1) (907 SE2d 593) (2024).

Criswell asserts that the statements were not properly admitted as prior consistent statements under OCGA § 24-6-613 ("Rule 613") because at the time of the admission, the employee's credibility had not been attacked. He also argues that

the text messages were not statements for identification as contemplated by Rule 801(d)(1)(C). We conclude, for the same reasons expressed in Divisions 1(a) and (b), that this claim of ineffective assistance of counsel must fail. First, because the Chevron employee's credibility was eventually attacked, the statements were properly admissible under Rule 613. *Walters*, 335 Ga. App. at 17; *Watson v. State*, 303 Ga. 758, 763(3) (814 SE2d 396) (2018) ("Failure to make a meritless objection cannot support a claim of ineffective assistance."). Second, because the scope of what constitutes a "statement for identification" under Rule 801(d)(1)(C) is not yet settled, Criswell's trial counsel could not be ineffective for failing to raise such an objection. *State v. Spratlin*, 305 Ga. 585, 593(2)(a) (826 SE2d 36) (2019) ("[C]ounsel is not deficient for failing to object under an unsettled question of law.") (citation omitted).

In sum, Criswell has failed to demonstrate any error or ineffective assistance of counsel related to the admission of the Chevron employee's text messages.

2. Criswell next argues that the trial court erred in admitting pictures of his tattoos. We find no reversible error.

Prior to trial, Criswell moved the court to exclude photographs which depicted his tattoos, contending that the photographs constituted improper character evidence

11

and their inclusion would be more prejudicial than probative. These tattoos were on Criswell's arms, and security camera footage from the Chevron showed that Criswell had several tattoos on both of his arms. Because the State sought to prove that the individual who left the Chevron shortly before the robbery, and returned to the Chevron shortly thereafter, was the individual who robbed the Texaco, the State argued that such evidence was not impermissible character evidence, but rather was being offered to prove identity. The trial court agreed, and the photographs of Criswell's tattoos were admitted over his objection.

This Court will not disturb a trial court's determination that evidence of a defendant's tattoos are admissible absent a clear abuse of discretion. *Jones v. State*, 315 Ga. 117, 121(3) (880 SE2d 509) (2022). The Supreme Court of Georgia has upheld the admission of evidence regarding tattoos when it is relevant for the purposes of identification. *Belmar v. State*, 279 Ga. 795, 798(3) (621 SE2d 441) (2005) ("We have upheld the admission of a photograph of a tattoo on the body of the defendant when it is . . . used for purposes of identification.") (citation omitted). However, OCGA § 24-4-403 ("Rule 403") provides that "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice,

confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403 is a rule of inclusion. *Jones*, 315 Ga. at 121(3) ("Although sometimes required, the exclusion of evidence under Rule 403 is an extraordinary remedy which should be used only sparingly.") (citation and punctuation omitted).

Here, while Criswell contends that his identity at the Chevron was not disputed, he has not directed this Court to any concession or stipulation where he admitted to being the individual at the Chevron, and our review of the record has not revealed any such concession. Because the State's argument was that the individual who was at the Chevron was also the individual who robbed the Texaco, evidence of visible tattoos in the Chevron security footage were clearly relevant to prove identity.

Regarding unfair prejudice, unlike in most cases where we have wrestled with the admissibility of character evidence,[1] the State did not proffer any evidence that the

---

[1] See, e.g., *Jones*, 315 Ga. at 121-22(3)(b) (concluding a tear drop tattoo allegedly commemorating a crime in which the defendant was charged was admissible); *Belmar*, 279 Ga. at 800(3) (concluding it was error to admit evidence of a "12-gauge" tattoo to prove defendant's propensity to possess guns); See also *Morris v. State*, 340 Ga. App. 295, 299(1), 304(2)(c) n. 42 (797 SE2d 207) (2017) (concluding a challenge to expert testimony that defendants were gang members based on, among other things,

tattoos at issue were gang affiliated or demonstrated a propensity for violence. Instead, the State sought merely to identify Criswell as the individual in the Chevron station security footage. Criswell has not provided any meaningful argument beyond his conclusory assertions that these tattoos were prejudicial in any way. Given that the tattoos were admitted as evidence for a proper purpose, and the lack of any demonstrated prejudice from their introduction, we conclude that the trial court did not err in admitting photographs of the tattoos which were visible in the security footage from the Chevron under Rule 403.

This conclusion does not end our inquiry, however, as our review of the photographs and security footage suggests that one of the tattoos was not visible in the Chevron security footage. Presuming, without deciding, that the admission of evidence of this tattoo was error, we conclude that any such error was harmless. *Grier v. State*, 377 Ga. App. 419, 430(2) (922 SE2d 643) (2025) ("The test for determining non-constitutional harmless error is whether it is highly probable that the error did not contribute to the verdict. In conducting harmless-error analysis, we review the record

_____

their tattoos was meritless).

14

de novo and weigh the evidence as we would expect reasonable jurors to have done.")
(citation and punctuation omitted).

In this case, evidence of the tattoos was not the only evidence that revealed Criswell as the Texaco robber. Instead, two witnesses identified Criswell as the individual who robbed the Texaco based on his voice; the jury saw that the individual at the Chevron left the station shortly before the robbery and returned wearing a sweatshirt similar to that worn in the robbery; and the individual who robbed the Texaco drove a distinctive green car and Criswell drove a similar car. Criswell also sought to exchange a large number of 100-dollar bills the day after the robbery, the same denomination of bills stolen by the Texaco robber. As such, there was ample evidence for a jury to convict Criswell of the robbery. To the extent that the trial court erred in denying Criswell's motion in limine as to the one potentially irrelevant tattoo, any error would have been harmless beyond a reasonable doubt. *Grier*, 922 SE2d at 657(2).

3. Criswell also asserts that the trial court erred by prohibiting him from cross examining his ex-girlfriend about her arrest. This claim of error leaves this Court with nothing to review.

During the ex-girlfriend's testimony at trial, Criswell's trial counsel told the trial court outside the presence of the jury that he intended to cross-examine her about a purported "domestic dispute." According to his trial counsel, such evidence would go to show her animus and bias against Criswell, "arguing she's here for revenge." Because Criswell did not have any documentation of such a domestic dispute, the trial court permitted him to examine the ex-girlfriend outside the presence of the jury and make a proffer to determine whether he had a good-faith basis to believe such a domestic dispute occurred, leading to the following exchange:

> [Defense counsel]: … I don't know, someone whispered in my ear, I don't know anything about this, I'm fishing. Straight up fishing. Were you arrested because of a family violence incident that involved my client?

> [Ex-girlfriend]: It wasn't family violence.

> [Defense counsel]: What was it?

> [Ex-girlfriend]: I think I got disorderly conduct[.]

> …

> [Defense counsel]: Disorderly conduct. But you were arrested and there was an incident between you and him?

[Ex-girlfriend]: Yes.

[Defense counsel]: Do you know if it's been resolved?

[Ex-girlfriend]: Yes.

[Defense counsel]: Can you tell me what the resolution was?

[Ex-girlfriend]: I think they gave me a fine and I paid it.

The trial court then permitted Criswell to question his ex-girlfriend about "any issues they had between one another[,]" but forbade him from questioning her regarding her arrest. Criswell now contends it was error to prohibit him from questioning her about her arrest pursuant to OCGA §§ 24-6-608(b) and 24-6-611(b).[2]

At the outset, we note that Criswell has provided no case law to support his contention that evidence of the purported disorderly conduct arrest would be admissible under either Code section, and this enumeration is abandoned as a result.

---

[2] OCGA § 24-6-608(b) permits, in the discretion of the trial court, cross-examination of a witness regarding specific instances of conduct indicative of the witness's bias towards a party, and OCGA § 24-6-611(b) provides that "[a] witness may be cross-examined on any matter relevant to any issue in the proceeding. The right of a thorough and sifting cross-examination shall belong to every party as to the witnesses called against the party."

See Court of Appeals Rule 25(d)(1) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned."); *In the Interest of K. R.*, 367 Ga. App. 668, 677(2)(b) (888 SE2d 204) (2023) ("[W]e have held that an argument is abandoned if it provides general citations to the 'most basic legal authority' without providing any legal authority or argument related to the specific facts of [the] case."); *Brittain v. State*, 329 Ga. App. 689, 704(4)(a) (766 SE2d 106) (2014) ("[A]n appellant must support enumerations of error with argument and citation of authority, and mere conclusory statements are not the type of meaningful argument contemplated by our rules.") (citation and punctuation omitted).

Moreover, even if we consider Criswell's argument, we find that he failed to show error. Despite being permitted to question the ex-girlfriend on the record regarding the purported incident, cross-examining her following her testimony with permission to develop facts regarding the purported incident, and raising this issue as error in his motion for new trial, Criswell has never elicited through testimony, nor even simply proffered, any specifics regarding the circumstances of her arrest. His failure to do so precludes any review by this Court. *Vick v. State*, 376 Ga. App. 716, 721(2) (920 SE2d 733) (2025) ("A judgment will not be reversed on the basis that the

trial court refused to allow a witness to testify where the record does not show what testimony the witness was expected to give.") (citation and punctuation omitted).

4. Finally, Criswell claims the errors at trial cumulatively prejudiced him. But we have presumed only one error by the trial court in Division 2, so there is nothing to aggregate and this claim fails. See *Flood v. State*, 311 Ga. 800, 808-09(2)(d) (860 SE2d 731) (2021) ("[W]hen reviewing a claim of cumulative prejudice, we evaluate only the effects of matters determined to be error, not the cumulative effect of non-errors.") (citation and punctuation omitted).

*Judgment affirmed. Barnes, P.J., and Markle, J., concur.*